970 A.2d 870

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

v.

**Ralph T. BYRD.**

**Misc. Docket AG No. 69, Sept. Term, 2007.**

Court of Appeals of Maryland.

April 14, 2009.

Reconsideration Denied June 5, 2009.

Fletcher P. Thompson, Assistant Bar Counsel (Melvin Hirshman, Bar Counsel, Attorney Grievance Commission of Maryland), for petitioner.

Melvin G. Bergman, Greenbelt, for respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

BARBERA, J.

The Attorney Grievance Commission of Maryland ("Petitioner"), acting through Bar Counsel and pursuant to Maryland Rule 16–751(a),[1] filed a Petition for Disciplinary or Remedial Action against Ralph T. Byrd, Respondent. Bar Counsel charged Respondent with violating the following Maryland Rules of Professional Conduct ("MRPC"): 1.1 (Competence),[2] 1.3 (Diligence),[3] 1.4(a)(2) (Communication),[4] 3.1 (Meritorious Claims and Contentions),[5] 3.2 (Expediting Litigation),[6] 3.3(a)(1) (Candor Toward the Tribunal),[7] 3.4(c) and (d) (Fair-

---

1. Maryland Rule 16–751(a) provides:

 (a) **Commencement of disciplinary or remedial action.** (1) Upon approval of the Commission. Upon approval or direction of the Commission, Bar Counsel shall file a Petition for Disciplinary or Remedial Action in the Court of Appeals.

2. MRPC 1.1 provides:

 A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

3. MRPC 1.3 provides:

 A lawyer shall act with reasonable diligence and promptness in representing a client.

4. MRPC 1.4(a)(2) provides:

 (a) A lawyer shall:
 (2) keep the client informed about the status of the matter[.]

5. MRPC 3.1 provides:

 A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes, for example, a good faith argument for an extension, modification or reversal of existing law. A lawyer may nevertheless so defend the proceeding as to require that every element of the moving party's case be established.

6. MRPC 3.2 provides:

 A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client.

7. MRPC 3.3(a)(1) provides:

 (a) A lawyer shall not knowingly:
 (1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer[.]

ness to Opposing Party and Counsel),[8] and 8.4(b), (c) and (d) (Misconduct).[9]

Pursuant to Maryland Rule 16–752(a),[10] we referred the petition to the Honorable Ronald B. Rubin of the Circuit Court for Montgomery County, for an evidentiary hearing and to make findings of fact and conclusions of law. Judge Rubin held a two-day hearing commencing on July 31, 2008. On August 26, 2008, he issued a Memorandum Opinion, pursuant to Maryland Rule 16–757(c).[11] Judge Rubin found by clear

---

8. MRPC 3.4(c) and (d) provide:

A lawyer shall not:

(c) knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists;

(d) in pretrial procedure, make a frivolous discovery request or fail to make reasonably diligent effort to comply with a legally proper discovery request by an opposing party.

9. MRPC 8.4(b), (c), and (d) provide:

It is professional misconduct for a lawyer to:

(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(d) engage in conduct that is prejudicial to the administration of justice[.]

10. Maryland Rule 16–752(a) provides:

(a) **Order.** Upon the filing of a Petition for Disciplinary or Remedial Action, the Court of Appeals may enter an order designating a judge of any circuit court to hear the action and the clerk responsible for maintaining the record. The order of designation shall require the judge, after consultation with Bar Counsel and the attorney, to enter a scheduling order defining the extent of discovery and setting dates for the completion of discovery, filing of motions, and hearing.

11. Maryland Rule 16–757(c) provides:

(c) **Findings and conclusions.** The judge shall prepare and file or dictate into the record a statement of the judge's findings of fact, including findings as to any evidence regarding remedial action, and conclusions of law. If dictated into the record, the statement shall be promptly transcribed. Unless the time is extended by the Court of Appeals, the written or transcribed statement shall be filed with the clerk responsible for the record no later than 45 days after the conclusion of the hearing. The clerk shall mail a copy of the statement to each party.

and convincing evidence that Respondent violated MRPC 1.1, 1.3, 1.4(a)(2), 3.1, 3.3(a)(1), 3.4(c), and 8.4(b)-(d).

## The Complaints

The charged violations were brought under three complaints. The first of them ("the Janis complaint"), was filed by Gary M. Janis, Esquire, an attorney with Peroutka & Peroutka, P.A., and relates to Respondent's involvement in a number of the firm's collection cases. The other two complaints, filed by Bar Counsel, stem from two unrelated matters: Respondent's involvement in another case with the Peroutka firm, the *Ziegler* case, and Respondent's conduct during a bankruptcy proceeding ("the bankruptcy complaint").

Judge Rubin found that the charges related to the complaint concerning the *Ziegler* case were not proven by clear and convincing evidence. Petitioner has not filed exceptions to those findings, so we shall not further address those charges. Judge Rubin's findings of fact and conclusions of law regarding the remainder of the charges follow.

## Findings of Fact and Conclusions of Law

By way of background, Judge Rubin found that Respondent was admitted to the bar of the State of New York in 1980, and to the bar of the State of Maryland in 1992. He served from 1986 to 1992 as an Associate General Counsel in the Office of the Comptroller for the State of New York. Then, in 1992, Respondent began a sole practice in Maryland, focusing initially on federal civil rights claims, employment discrimination claims, and tort actions.

In 1998, Respondent began to shift his practice to debtors' rights under state law. In that regard, Judge Rubin wrote:

Byrd elected to pursue this area because he was getting sued by creditors and, as a result of defending his own case, learned defenses available in credit card cases. In particular, Byrd began to develop defenses under the provisions of the Maryland Commercial Code regarding retail credit accounts. Md. Commercial Law Article §§ 12–501, *et. seq.*

(2005 Rep. Vol.). *See Jackson v. Pasadena Receivables, Inc.,* 398 Md. 611 [921 A.2d 799] (2007).

Judge Rubin's complaint-specific findings of fact and conclusions of law followed. We quote those findings and conclusions, and include the numbered paragraphs associated with them for ease of reference later in this opinion. Judge Rubin began with the Janis complaint:

5. On September 28, 2006, Gary M. Janis, an attorney with Peroutka & Peroutka, P.A. (the "Peroutka firm") filed a complaint against Byrd. The Peroutka firm specializes in filing collection cases, mostly on behalf of credit card companies or firms that have purchased debt from credit card companies, in the District Courts of Maryland. The complaint alleged numerous acts of misconduct by Byrd arising out of Byrd's representation of debtor defendants in District Court cases.

6. Byrd testified at the hearing that, over time, he represented the majority of debtors sued by the Peroutka firm and became "quite a thorn in their side." With respect to the matters discussed below, Byrd claimed that he first learned of the problems when contacted by Bar Counsel and that the Peroutka firm never complained to him directly. The court finds Byrd to be credible in this regard.

7. Byrd entered his appearance in the *Mebane* collection case in the District Court for Prince George's County on March 10, 2006. Trial was set for March 29, 2006. On March 10, 200[6], Byrd moved for a continuance due to a scheduling conflict. The continuance was not granted and, when neither Byrd nor the defendant appeared for trial, the District Court entered a default judgment. The District Court vacated the default judgment on May 24, 200[6]. Byrd testified at the hearing that he simply "assumed" that a continuance would be granted because he had a conflict.

8. On June 23, 2006, in the *Hooker* case pending in the District Court for Prince George's County, Byrd filed a motion to reconsider the denial of a motion quashing a subpoena. The hearing on the motion was scheduled for

August 18, 2006. Byrd did not appear for the hearing. Opposing counsel appeared and the motion was denied. Byrd's explanation, which this court does not find to be credible, is that he believed that the hearing had been cancelled.

9. Byrd appeared in the *Honsberger* case in the District Court for Baltimore County on May 3, 2006, and both sides requested a continuance. The trial was postponed until July 6, 2006. Byrd appeared for trial on July 6, 2006 and requested another continuance, stating that he had been unable to reach his client. Byrd told the District Court that the last time he had spoken with his client the client had said that she was going out of town for the 4th of July holiday. The court denied the motion, the case was heard, and judgment was entered against Byrd's client. Byrd later filed a motion for a new trial, accompanied by an affidavit from the client, in which the client stated that Byrd had not informed her of the July 2006 trial date. The new trial motion was denied. The court finds that Byrd, contrary to his representation to the District Court, did not inform his client of the July 2006 trial date.

10. On June 12, 2006, Byrd filed a motion to continue the *Respass* case, which was set for trial in the District Court for Prince George's County on July 16, 2006. The case was continued on June 15, 2006, but Byrd did not serve counsel for the plaintiff with a copy of his continuance motion. On August 4, 2006, the court in the *Respass* case ordered Byrd to file supplemental interrogatory answers by August 22, 2006. The certificate of service signed by Byrd stated that the supplemental answers were mailed on August 22, 2006. However, the postmark on the envelope disclosed that they were not mailed until August 26, 2006. The court finds that Byrd did not mail the supplemental interrogatory answers until April 25, 2006, at the earliest.

11. Byrd filed an appeal in the *Harvey* case in Prince George's County. A trial *de novo* was set for April 14, 2006. Byrd withdrew the appeal and purported to mail the notice on April 10, 2006. Counsel for the plaintiff did not receive

Byrd's notice before the date set for the appeal and appeared at the courthouse. When she returned to her office, Byrd's notice was on her desk, with a United States postmark of April 13, 2006. The court finds that Byrd did not mail the notice withdrawing the appeal on April 10, 2006, as he represented in his certificate of service.

12. In the *Sy* case in the District Court for Prince George's County, the court granted the plaintiff's motion to compel complete interrogatory answers and ordered Byrd to file complete answers. Byrd did not do so and, on May 10, 2006, the plaintiff moved for sanctions. On May 26, 2006, Byrd provided interrogatory answers, but they were not under oath, as required by Maryland Rule 3–421(d).

13. In the *Faulkner* case in the District Court for Prince George's County, the plaintiff served interrogatories on February 21, 2006. Byrd did not respond, and the plaintiff moved to compel on March 13, 2006. The court ordered Byrd to file answers by April 15, 2006. When Byrd did not comply with the court's order, the plaintiff moved for sanctions on April 18, 2006. On April 20, 2006, Byrd filed interrogatory answers that were not under oath. In open court on April 21, 2006, Byrd agreed to provide supplemental answers by May 5, 2006. On May 13, 2006, Byrd mailed interrogatory answers to the plaintiff that were not under oath. At the hearing before this court, Byrd defended his conduct in the *Sy* and *Faulkner* cases by claiming that the Peroutka firm was "playing games" with discovery. The court finds Byrd's explanation for his failure to follow the Maryland Rules not to be credible.

14. In the *Kaplan* case in the District Court for Montgomery County, Byrd entered his appearance after judgment had been entered against the client. On September 15, 2006, Byrd moved to vacate the judgment, which was denied. On October 10, 2006, Byrd moved for reconsideration of the motion to vacate, which was also denied. Byrd then filed an appeal on November 29, 2006. The appeal was dismissed on December 1, 2006, as untimely.

Judge Rubin came to the following conclusions of law regarding the Janis complaint:

15. The court is mindful of the hectic pace of practice before the District Courts and that, as a practical matter, honest mistakes are made, perhaps even with some regularity. Nevertheless, in the *Mebane* case, Byrd violated Rules 1.1 and 1.3 when, without an adequate reason, he failed to appear for a scheduled trial. *Attorney Grievance Comm'n v. Harris*, 366 Md. 376, 403 [784 A.2d 516] (2001). *See also Attorney Grievance Comm'n v. Harris*, 371 Md. 510, 545–48 [810 A.2d 457] (2002); *Attorney Grievance Comm'n v. Ficker*, 319 Md. 305, 315 [572 A.2d 501] (1990). Although a motion for continuance had been filed, it had not been granted. The granting of a continuance is in the hands of the court, not counsel. Byrd's failure to appear for the motions hearing in the *Hooker* case, without a cogent explanation, also violated Rule 1.1 and 1.3. *Attorney Grievance Comm'n v. Ober*, 350 Md. 616, 629–30 [714 A.2d 856] (1998).

16. Byrd's conduct in the *Honsberger* case is disturbing. He did not notify his client of the trial date. His excuses at the hearing before this court were neither consistent nor credible. Such conduct, at a minimum, violates Rule 1.4(a)(2). *See Attorney Grievance Comm'n v. Rose*, 391 Md. 101, 110–11 [892 A.2d 469] (2006). *See also Attorney Grievance Comm'n v. Kreamer*, 404 Md. 282 [946 A.2d 500] (2008).

17. Byrd's repeated failures to mail documents on the dates represented in the certificates of service in the *Respass* and *Harvey* cases violated Rule 3.3(a)(1), as the representations as to mailing were false and his failure to timely mail documents affected the handling of the cases by opposing counsel.

18. Byrd's failures to serve interrogatory answers under oath in *Sy* and *Faulkner* violated Rule 1.1. His filing of an untimely appeal in the *Kaplan* case violated Rule 1.1 as well.

19. Standing alone, none of these matters likely would warrant serious disciplinary action. But when the court

reviews the facts of the case as a whole, the court is convinced that Byrd's conduct evidences a regular, intentional disregard of the Maryland Rules in his handling of debt collection cases, a disregard that is not countenanced simply because the Petrouka firm may have been playing "hardball" with Byrd's clients. If opposing counsel is engaging in discovery conduct which the attorney believes is improper, counsel should meet and confer to attempt in good faith to resolve the issues. *See Rodriguez v. Clarke,* 400 Md. 39, 61–64 [926 A.2d 736] (2007). If no resolution is obtained, resort may be had to the trial judge or, if necessary, to the administrative judge. But under no circumstances can counsel simply violate the Rules as a litigation strategy.

With regard to the bankruptcy complaint, Judge Rubin made the following pertinent findings of fact and conclusions of law:

23. On December 14, 2001, Platinum Financial Services Corporation ("Platinum Financial"), one of Byrd's creditors, filed an involuntary bankruptcy petition under Chapter 7 of the federal Bankruptcy Code. The Bankruptcy Code permits a single creditor to file an involuntary petition as long as: (1) the debtor has fewer than twelve creditors; and (2) the creditor filing the petition holds claims totaling more than $11,625 that are not subject to a bona fide dispute. 11 U.S.C. § 303(b). Platinum Financial had final judgments against Byrd of over $32,000.

24. Platinum Financial is controlled by principals of Wolpof & Abramson, a collections law firm with whom Byrd had clashed. On December 5, 2001, nine days before the involuntary Chapter 7 proceeding was filed, Byrd filed a class action against Platinum Financial in the Circuit Court for Montgomery County.

25. Upon the filing of the Chapter 7 petition, the bankruptcy court appointed Roger Schlossberg, Esquire, as the Chapter 7 Trustee. Mr. Schlossberg retained as his counsel James M. Hoffman, Esquire, of Shulman, Rogers, Gandal, Pordy & Ecker, P.A.

26. On July 24, 2002, Byrd appealed the institution of the Chapter 7 proceeding to the district court, which vacated the action. The Trustee appealed to the United States Court of Appeals for the Fourth Circuit. The district court, by Order entered on March 27, 2003, stayed the dismissal of the Chapter 7 case pending appellate review. On February 11, 2004, by a published opinion, the Fourth Circuit reversed the district court's dismissal of the Chapter 7 proceeding, and remanded the case for further proceedings in the bankruptcy court. *In re Byrd*, 357 F.3d 433 (4th Cir.2004).[3]

[3] At the hearing before this court, Byrd criticized the Fourth Circuit's decision for allegedly failing to address one of his grounds for appeal. This court rejects that contention for the reasons set forth by Judge William Nickerson, in his Memorandum Opinion, entered June 15, 2004, denying Byrd's motion for reconsideration of the remand order.

27. After remand to the bankruptcy court, Byrd converted his Chapter 7 liquidation case to a case under Chapter 11 reorganization. However, in the exercise of its discretion, the bankruptcy court appointed a Trustee, rather than allow Byrd to control the estate.

28. The bankruptcy court had good reason to appoint a Trustee, even though the case had been converted to a reorganization under Chapter 11. For example, on December 18, 2002, the bankruptcy court ordered Byrd to permit the Trustee and the Trustee's attorney to have complete access to the property and its improvements. Byrd did not do so.

29. As a consequence, on January 24, 2004, the bankruptcy court found Byrd in contempt and, again, ordered Byrd to allow access to the property.[4]

[4] James Hoffman, counsel for the original trustee, had repeatedly written to Byrd seeking access to the property. His requests went largely unanswered, and Byrd refused to allow access to the property. For example, on January 9, 2003, the Trustee attempted to gain access to the property but was prevented from doing so by the presence of an unrestrained Doberman.

30. The original Trustee, Roger Schlossberg, declined to continue to serve, so on July 23, 2004, the bankruptcy court appointed Gregory Johnson, Esquire, to act as Trustee.

31. Johnson testified at the hearing in this case. Johnson is very experienced in bankruptcy matters, having been appointed as a trustee by the bankruptcy court in many cases since 1986. Given the state of the case, Johnson had a sense of urgency because Byrd had failed to attend a meeting of creditors, was not returning Johnson's calls and had failed to cooperate with the prior Trustee. Johnson attempted to seek Byrd's cooperation on several occasions, but was not successful. The court finds Johnson's testimony regarding his efforts to work with Byrd to achieve an orderly administration of the estate to be credible. The court also finds that Johnson is an accurate reporter of events.

32. The principal asset of the estate was Byrd's real property in Laytonsville, Maryland, consisting of a residence and eleven acres of farmland. As a consequence of Byrd's repeated failures to cooperate, on August 25, 2004, Johnson filed a motion for a Writ of Assistance from the United States Marshal.

33. On September 15, 2004, the bankruptcy court granted Johnson's motion and ordered Byrd to allow access to the property on twenty-four hour telephonic notice.

34. Johnson attempted to call Byrd on September 21, 2004, but Byrd did not answer his telephone.

35. On September 24, 2004, Johnson and a potential buyer went to the property but could not gain access because the gate was locked and a car blocked the entrance to the driveway. Johnson attempted to call Byrd, but Byrd did not answer his telephone.

36. On September 24, 2004, Johnson filed another motion in the bankruptcy court requesting to be [sic] Byrd compelled [sic] to grant him access to the property.

37. On October 7, 2004, the bankruptcy court entered an order compelling Byrd to allow Johnson access to the

property and issued a Writ of Assistance. The court found that Byrd had failed to comply with the court's prior orders regarding the property.

38. On November 11, 2004, Byrd's wife, a co-owner of the property, filed a petition under Chapter 13 of the Bankruptcy Code, which had the effect of staying Johnson's efforts to sell the property.

39. On January 13, 2006, the bankruptcy court consolidated Byrd's case with that of his wife. On January 30, 2006, the court denied confirmation of Byrd's proposed plan of reorganization under Chapter 11, and converted the case to a Chapter 7 liquidation. Johnson was appointed as the Chapter 7 trustee.

40. On April 19, 2006, Hoffman, as counsel to the trustee, wrote to Byrd and advised him of the trustee's intention to sell the property and requested that Byrd vacate the premises within thirty days. Byrd refused to vacate the premises.

41. On September 16, 2006, Hoffman again wrote to Byrd and requested that Byrd vacate the property by October 15, 2006. Again, Byrd refused.

42. On September 18, 2006, Johnson filed a motion to authorize the removal of Byrd from the property. The court held a hearing on December 1, 2006 and, on December 11, 2006, ordered that Byrd vacate the premises by January 31, 2007. Byrd did not obey the court's order.

43. Hoffman testified at the hearing regarding his efforts to work with Byrd regarding access to and the sale of property. The court finds Hoffman's testimony to be credible, accurate, and reliable.

44. The court does not find Byrd's testimony regarding access to and the sale of the property to be credible.

45. Under the Bankruptcy Code, Byrd was required to file monthly reports that set forth his income, expenses, opening balance and closing balance.

46. Byrd did not file accurate or complete reports. Byrd did not provide timely or accurate information to Johnson,

or provide supporting bank statements, despite a court order requiring him to do so.

47. The court finds that Byrd's reports to the bankruptcy court were false, and that Byrd knew they were false when he filed the reports.

48. U.S.C. § 1001 makes it a crime to falsify or conceal a material fact, or to make a false statement or provide a false document to the government or a government agent. *Brogan v. United States*, 522 U.S. 398 [118 S.Ct. 805, 139 L.Ed.2d 830] (1998). 18 U.S.C. § 1621 prohibits perjury. *Bronston v. United States*, 409 Md.[U.S.] 352[, 93 S.Ct. 595, 34 L.Ed.2d 568] (1973).

49. Hoffman testified extensively on the subject of Byrd's business reports and prepared a comparison of Byrd's reports with bank records Hoffman ultimately obtained. The court finds Hoffman's testimony regarding the falsity of Byrd's reports to be highly credible.

50. On April 19, 2006, Hoffman, on behalf of the Trustee, wrote to Byrd requesting financial information. Byrd did not respond to this letter.

51. On May 8, 2006, Hoffman again wrote to Byrd requesting financial information and reminding Byrd of the prior request. Again, Byrd did not respond to the request.

52. On June 16, 2006, Hoffman wrote to Byrd for a third time, requesting financial information, and advising Byrd that the information would be needed fourteen days before the meeting of creditors.

53. When no response was received, Hoffman wrote again on September 15, 2006. Byrd did not respond.

54. On October 24, 2006, the Trustee filed a motion to compel Byrd to produce documents and financial information. The bankruptcy court held a hearing on December 1, 2006.

55. On December 8, 2006, the court ordered Byrd to produce financial information, including all bank statements for the period December 14, 2001 through January 31, 2006.

56. Byrd wrote to Hoffman on January 30, 2007, stating that he did not have any of the requested records. According to Byrd, they were "lost" when he moved from the Laytonsville property.

57. On February 15, 2007, the Trustee filed a motion to hold Byrd in contempt, and for monetary sanctions, for failing to produce the requested financial information. A hearing was set for April 2, 2007.

58. On the morning of the hearing, Byrd produced some bank records, cancelled checks and his 2005 federal income tax return. The hearing was postponed until April 25, 2007, to give the Trustee time to review the documents.

59. The bankruptcy court held a hearing on April 25, 2007. On September 27, 2007, the bankruptcy court held Byrd in contempt for failing to produce documents and awarded sanctions. Under the Bankruptcy Code, the debtor is obligated to cooperate with the Trustee, and to surrender to the Trustee all property of the estate and all documents relating to the property of the estate. 11 U.S.C. § 521(a)(3) & (4). The bankruptcy court specifically found that Byrd's "objections were without merit and filed for purposes of delay." The bankruptcy court also found that Byrd and his wife "had no just cause for their refusal to provide the documents and information to the Trustee in response to his letters, or for their failure to comply with the Production Order." Sanctions were awarded because the "record here establishes a continuous, ongoing effort by the Debtors to frustrate the Trustee's administration of the estate. The Debtors have turned a request for documents by the Trustee into a costly, year-long charade." The bankruptcy court also found that Byrd "offered no plausible explanation for [his] failure to produce the information." Finally, the court found that Byrd's conduct was "willful."

60. The court denied Byrd a discharge in bankruptcy.

61. After a hearing, on April 23, 2007, the bankruptcy court ruled from the bench that the Trustee could sell Byrd's residence. An order to this effect was entered by the court on April 25, 2007. The bankruptcy court author-

ized the Trustee to sell the property "free and clear of all liens, claims, interests and encumbrances." 11 U.S.C. § 363(f).

62. On April 23, 2007, shortly before the hearing on the Trustee's motion to sell the house, Byrd filed a lawsuit in the Circuit Court for Montgomery County requesting, among other things, that the state court impose a constructive trust on the residence that was part of the bankruptcy estate. Among others, Byrd named as defendants the current Trustee (Johnson), the former Trustee (Schlossberg), counsel to the Trustee (Hoffman), counsel's law firm (Shulman Rogers), Bar Counsel and an investigator for the Attorney Grievance Commission.[5] Byrd filed an amended complaint in state court on May 2, 2007, seeking the same relief.

5 Byrd defended his suing Bar Counsel and the investigator on the ground that he was served with a subpoena for documents on March 6, 2007, by the investigator while Byrd was preparing to argue a case in the Circuit Court for Howard County. Byrd claimed that the purpose was to "distract" him from his impending oral argument. Byrd also contended that Bar Counsel had conspired with others to "drive Plaintiff out of business."

63. On May 7, 2007, the Trustee filed an emergency motion requesting Byrd to be held in contempt for violating the automatic stay (11 U.S.C. § 362(a)) and for other relief. Byrd argued in response that the mere filing of the state court complaint against the Trustee, without actual service of process, did not violate the automatic stay.

64. On May 18, 2007, the bankruptcy court granted the motion and entered an order enjoining Byrd "from filing, pursuing or maintaining any action in state or federal court, seeking to obtain possession, custody or control of or any interest in" the Laytonsville Property. The court further enjoined Byrd "from taking any other action, including but not limited to filing a lis pendens against the Property...." The court also enjoined Byrd "from filing, pursuing or maintaining any action in state or federal court seeking any remedy against the Trustee, Mr. Roger Schlossberg, the

initial Chapter 7[T]rustee .... and Shulman Rogers ....
without first seeking and obtaining leave of this Court."

65. Nevertheless, on May 29, 2007, after the issuance of
the bankruptcy court's injunction, Byrd filed a second
amended complaint in the Circuit Court for Montgomery
County. In this second amended complaint, Byrd incorpo-
rated all of the allegations set forth in the May 2, 2007
complaint and added, as defendants, the purchasers of the
property. Byrd neither sought nor obtained the permission
of the bankruptcy court before filing the second amended
complaint in state court.

66. On June 1, 2007, the Trustee filed an emergency
motion due to Byrd's violation of the bankruptcy court's
injunction.

67. Byrd served Shulman Rogers with the second amend-
ed complaint on July 5, 2007. Byrd served Schlossberg, the
initial Trustee, with the second amended complaint on July
18, 2007.

68. On September 27, 2007, the bankruptcy court entered
an order finding Byrd in contempt for willfully violating the
court's order of May 18, 2007.

69. By Order dated July 31, 2008, the district court (Alex-
ander Williams, Jr.) affirmed the bankruptcy court's con-
tempt order of September 27, 2007. In affirming the bank-
ruptcy court, Judge Williams held that Byrd's filing of the
second amended complaint "was particularly egregious be-
cause the [bankruptcy] court previously told [Byrd] that this
type of action would violate the stay." Judge Williams
concluded: "Because serving the Second Complaint did
constitute willfulness and bad faith, this Court finds that the
bankruptcy court appropriately imposed sanctions...."

70. Byrd testified at the hearing before this court that he
was justified in filing both state court complaints. He
claimed to have performed extensive legal research that
justified his actions.[6]

---

[6] The law appears not to support Byrd's views. *In re Nat'l Century Fin. Enters.,* 423 F.3d 567, 575 (6th Cir.2005); *Muratore v. Darr,* 375 F.3d 140, 143 (1st Cir.2004); *Vass v. Conron Bros. Co.,* 59 F.2d 969,

970 (2d Cir.1932); *In re Silver Oak Homes, Ltd.*, 167 B.R. 389, 395 (Bankr.D.Md.1994); *In re Allnutt*, 220 B.R. 871, 888 (Bankr.D.Md. 1998).

71. Byrd is not remorseful for his actions. To the contrary, Byrd believes that his actions were entirely justified.

72. This court finds that Byrd does not appreciate the gravity of his conduct.

Judge Rubin then stated his conclusions of law concerning the bankruptcy matter:

73. The Court of Appeals summarized an attorney's duty to obey court orders in *Attorney Grievance Comm'n v. Garland*, 345 Md. 383, 398–99 [692 A.2d 465] (1997). Speaking through Judge Raker, and quoting extensively from *Maness v. Meyers*, 419 U.S. 449, 458–59 [95 S.Ct. 584, 42 L.Ed.2d 574] (1975), the Court of Appeals made it quite clear that a court order must be obeyed until it is vacated, modified or overturned on appeal. *Garland*, 345 Md. at 398–99 [692 A.2d 465]. What lawyers simply cannot do is make "private determinations" of law.

74. Justice Jackson commented on an attorney's duty to obey court orders in *Sacher v. United States*, 343 U.S. 1, 9 [72 S.Ct. 451, 96 L.Ed. 717] (1952), as follows: "Of course, it is the right of counsel for every litigant to press his claim, even if it appears farfetched and untenable, to obtain the court's considered ruling.... But if the ruling is adverse, it is not counsel's right to resist or to insult the judge—his right is only respectfully to preserve his point for appeal."

75. Judge Greene, speaking as a circuit court judge in an attorney disciplinary matter, cogently remarked that "where an attorney refuses to obey a lawful order of a court, it shows obvious contempt for the very same court of which the Respondent is an officer." *Garland*, 345 Md. at 398 [692 A.2d 465].

76. During the course of the bankruptcy case, Byrd made innumerable private determinations of law. Byrd's willful misconduct in flagrantly disobeying court orders and the rules of the bankruptcy court, manifestly involved dishones-

ty and was prejudicial to the administration of justice. The conduct violated Rule 8.4(c) & (d).

77. Byrd violated Rule 3.4(c) when he contravened the bankruptcy court's order of September 15, 2004, after already having been found in contempt for violating the order of December 18, 2002 requiring him to allow access to the property. Byrd also violated the bankruptcy court's order of December 11, 2006, to vacate the premises by January 31, 2006. Byrd did not, and cannot, claim that these orders were not valid. Byrd's knowing and intentional violation of court orders is a violation of Rule 3.4(c). *Attorney Grievance Comm'n v. Mininsohn,* 380 Md. 536, 566 [846 A.2d 353] (2004). Byrd's conduct in this regard also violated Rule 8.4(d).

78. Byrd's filing of false business reports violated Rules 8.4(b), (c), and (d). *Attorney Grievance Comm'n v. Siskind,* 401 Md. 41, 67–70 [930 A.2d 328] (2007). As Judge Harrell aptly noted in *Siskind,* "words spoken by an attorney who knows they were untrue involves an inherent intent to deceive." *Id.* at 70 [930 A.2d 328]. Hence, Byrd's false statements to the bankruptcy court and to the Trustee regarding his financial status violated Rules 8.4(a), (c) and (d). *Attorney Grievance Comm'n v. Harris,* 403 Md. 142, 164–65 [939 A.2d 732] (2008); *Attorney Grievance Comm'n v. Pak,* 400 Md. 567, 606–08 [929 A.2d 546] (2007); *Attorney Grievance Comm'n v. Sweitzer,* 395 Md. 586, 594 [911 A.2d 440] (2006); *Attorney Grievance Comm'm [Comm'n] v. White,* 354 Md. 346, 363–64 [731 A.2d 447] (1999). *Cf. Attorney Grievance Comm'n v. Floyd,* 400 Md. 236, 251–54 [929 A.2d 61] (2007) (intentional concealment of a material fact may violate Rule 8.4(c) if there is an intent to mislead).

79. With respect to Rule 8.4(b), the court concludes that Byrd committed criminal acts that reflect adversely on his fitness as a lawyer when he knowingly filed false business reports with the bankruptcy Trustee. The criminal acts are making false statements in violation of 18 U.S.C. § 1001 and perjury in violation of [1]8 U.S.C. § 1621. *See Attorney Grievance Comm'n v. Parsons,* 404 Md. 175, 179–80 [946

A.2d 437] (2008); *Attorney Grievance Comm'n v. White*, 354 Md. at 362–63 [731 A.2d 447]. *See also Attorney Grievance Comm'n v. Mininsohn*, 380 Md. at 566–68 [846 A.2d 353]. The fact that Byrd has not been convicted of a crime is of no moment. *Attorney Grievance Comm'n v. Garland*, 345 Md. 383, 394–95 [692 A.2d 465] (1997).

80. Byrd violated Rule 3. 1, Rule 3.4(c) and Rule 8.4(d) when he filed his second amended complaint in state court because Byrd had no colorable cause of action against the Trustee, counsel to the Trustee, Bar Counsel or the purchasers of the property. Byrd also violated these Rules when he flatly disobeyed the bankruptcy court's injunction.

81. As Byrd testified at the hearing before this court, he "just wanted to tell his story." This is the only reason he provided for intentionally violating the injunction. This reason is legally insufficient.

## Mitigation

Judge Rubin made the following findings concerning mitigation. He found that Respondent proved by a preponderance of credible evidence that he has no prior disciplinary record, and he and his counsel cooperated with Bar Counsel and the hearing court. Judge Rubin further found that Respondent did not have "any disabling mental or physical condition that caused or contributed to his misconduct."

## Standard of Review

We recently set forth the standard by which we consider attorney grievance matters:

This Court has original and complete jurisdiction over attorney discipline proceedings in Maryland. Even though conducting an independent review of the record, we accept the hearing judge's findings of fact unless they are found to be clearly erroneous. This Court gives deference to the hearing judge's assessment of the credibility of witnesses. Factual findings by the hearing judge will not be interfered with if they are founded on clear and convincing evidence.

All proposed conclusions of law made by the hearing judge, however, are subject to *de novo* review by this Court. *Attorney Grievance Comm'n v. Ugwuonye*, 405 Md. 351, 368, 952 A.2d 226, 235–36 (2008) (citations and internal quotation marks omitted).

 "[T]he hearing judge must 'apply the clear and convincing standard of proof when weighing the evidence,'" in order to find the facts. *Attorney Grievance Comm'n v. Siskind*, 401 Md. 41, 54, 930 A.2d 328, 335 (2007) (quoting *Attorney Grievance Comm'n v. Ward*, 394 Md. 1, 16, 904 A.2d 477, 486 (2006)); *accord* Md. Rule 16–757(b).[12] "'The clear and convincing standard of proof lies somewhere between a preponderance of evidence standard, which is generally applied to civil cases, and beyond a reasonable doubt standard, which is applied to most crimes.'" *Siskind*, 401 Md. at 54, 930 A.2d at 335 (quoting *Ward*, 394 Md. at 16, 904 A.2d at 486). Moreover, "[t]he attorney subject to the disciplinary hearing may assert an affirmative defense or a matter of mitigation or attenuation, but has the burden of proving the defense or matter by a preponderance of the evidence." *Siskind*, 401 Md. at 54, 930 A.2d at 335 (internal citation and quotation marks omitted).

## Discussion

Petitioner has filed no exceptions. Respondent submits numerous exceptions to Judge Rubin's findings of fact concerning the Janis complaint and the bankruptcy complaint.

### *The Janis Complaint*

In his first exception, Respondent writes:

---

**12.** Md. Rule 16–757(b) provides:

(b) **Burdens of proof.** The petitioner has the burden of proving the averments of the petition by clear and convincing evidence. A respondent who asserts an affirmative defense or a matter of mitigation or extenuation has the burden of proving the defense or matter by a preponderance of the evidence.

Respondent excepts to the Finding in paragraph 7 of the Circuit Court's Memorandum Opinion that he testified he simply "assumed" that the continuance would be granted.... Respondent stated he thought the continuance would be "automatic under the circumstances," not that he "assumed" anything.

This exception relates to Judge Rubin's findings concerning the *Mebane* case. We have reviewed the hearing transcript, and we agree with Respondent that he did not testify that he "assumed" a continuance would be granted in that case. He did, however, testify:

I filed a motion for a continuance along with proof of the notice from another case that showed that I had to be in another courtroom at the same time, someplace else at the same time. And I just thought that automatically under the circumstances I would obtain the continuance and I didn't show up on the date and I thought that the continuance would have been automatic under those circumstances when I showed that there was a conflict.

Jude Rubin fairly inferred from Respondent's testimony that Respondent assumed he would get a continuance upon proof that he had a conflict. We therefore overrule the exception.

In his next exception, Respondent states:

Respondent also excepts to the Finding in paragraph 8 of the Circuit Court's Memorandum Opinion that [Judge Rubin's] explanation that he believed the hearing in the *Hooker* case had been cancelled was not credible. The Finding is not supported by clear and convincing evidence. Neither the testimony from the Respondent [ ] nor the testimony from the witness for the Complainant [ ] supports this finding in any way.

Judge Rubin found that Respondent had filed a motion to reconsider the denial of a motion quashing a subpoena, then failed to appear at the scheduled hearing on the motion. Respondent's explanation for not appearing at the hearing was that, because one other motion filed by opposing counsel had

been withdrawn, he "thought that both matters had been taken off the calendar and [he] didn't show up."

It is well-settled that the hearing judge may "elect to pick and choose which evidence to rely upon," when assessing the credibility of the witnesses. *Attorney Grievance Comm'n v. Harris,* 403 Md. 142, 158, 939 A.2d 732, 742 (2008) (internal citation and quotation marks omitted); *accord Attorney Grievance Comm'n v. Walter,* 407 Md. 670, 678, 967 A.2d 783, 788 (2009) (stating that "the hearing judge was entitled to accept—or reject—*all, part,* or *none* of the testimony of any witness, including testimony that was not contradicted by any other witness"). The hearing judge's factual findings, moreover, are entitled to significant deference. *See Attorney Grievance Comm'n v. Kimmel,* 405 Md. 647, 667, 955 A.2d 269, 281 (2008). Judge Rubin, as he had the prerogative to do, did not believe Respondent's explanation for not appearing at the scheduled hearing. We defer to that credibility determination, and overrule the exception, accordingly.

In his next exception, Respondent states:

Respondent also excepts to the Finding in paragraph 9 of the Circuit Court's Memorandum Opinion that "contrary to his representation to the District Court" Respondent did not inform his client of the court date. The Finding is not supported by clear and convincing evidence. Nowhere in the transcript of the District Court proceedings in the *Housberger* case does Respondent claim he informed his client of the trial date. To the contrary Respondent told the District Court he had attempted to reach his client but had been apparently calling the wrong telephone number.

A transcript of the July 6 proceeding before the district court was made an exhibit at the hearing. We have reviewed the transcript, just as Judge Rubin must have done. The transcript discloses that Respondent wanted a continuance because his client was not present due to the fact that he had not "been able to reach [his] client in a couple of weeks" and the last time he had spoken to his client, she told him that she was "going out of town for the 4th [likely, a reference to the

Fourth of July holiday].'' The district court, evidently under the impression that Ms. Honsberger's failure to appear was her fault, declined to grant Respondent a continuance. The trial went forward and the plaintiff in that case prevailed.

Respondent filed a motion for new trial, attaching to the motion the affidavit of his client. That affidavit also was before Judge Rubin. In it, Ms. Honsberger swore that she had not received notice of the trial date from either the court or Respondent. She further swore that Respondent did not have the correct telephone number for her.

Respondent and an attorney for the Peroutka firm who was present at the July 6 district court proceeding testified at the hearing before Judge Rubin. Each attorney addressed the various explanations Respondent gave—both to Judge Rubin and, previously, to the district court judge—for not contacting his client. We have reviewed the testimony and the exhibits, and we note, as did Judge Rubin, that Respondent's explanations lack consistency. It is true, as Respondent argues, that ''[n]owhere in the transcript of the District Court proceedings in the *Honsberger* case does [he] claim he informed his client of the trial date.'' Yet, Judge Rubin was entitled to weigh the evidence and find, first, that Respondent in fact had not told his client about the July 6 trial date, and, second, that he had no good reason for failing to do so. In the latter respect, Judge Rubin was free to discredit Respondent's explanations for not informing his client of the trial date. Consequently, we overrule Respondent's third exception.

Respondent's next exception addresses the court's findings concerning the *Respass* case. That exception reads:

Respondent also excepts to the Finding in paragraph 10 of the Circuit Court's Memorandum Opinion that "Byrd did not serve counsel for the plaintiff with a copy of his continuance motion." The Finding is not supported by clear and convincing evidence. The motion included a certificate of service. Otherwise it would not have been accepted by the court clerk for filing. Assuming *arguendo* counsel for the plaintiff, in fact, did not receive the copy of the continuance

motion, that fact would not constitute clear and convincing evidence that Respondent did not serve said counsel with the motion.

Respondent argues in further support of the exception that the Peroutka firm never complained during litigation of the *Respass* case about the lack of service.

We shall consider this exception together with Respondent's exception directed at Judge Rubin's finding, in paragraph 11 of the memorandum opinion, that Respondent had not mailed a notice withdrawing his client's appeal in the *Harvey* case, on April 10, 2006, contrary to what "he represented in his certificate of service." Respondent argues, for much the same reasons as he does in connection with the previous exception, that the finding is not supported by clear and convincing evidence.

Judge Rubin heard from Michele Gagnon, of the Peroutka firm, on the subject. She testified that Respondent was directed to send all mailings in the *Respass* case to her, but her office never received a copy of Respondent's motion for a continuance. Further, the office manager for the Peroutka firm swore in an affidavit that the office did not receive the motion for continuance anytime between June 12 and June 16. With regard to the notice withdrawing the appeal in the *Harvey* case, Judge Rubin had before him a copy of Respondent's Notice of Withdrawal of Appeal, with a certificate of service to the law firm dated April 10, 2006, as well as the envelope in which a copy of that document was mailed to the firm. The envelope was postmarked April 13, 2006.

This evidence sufficed to permit Judge Rubin reasonably to infer that Respondent did not serve the Peroutka firm with a copy of his motion for continuance in the *Respass* case, and he delayed service of his withdrawal of the appeal in the *Harvey* case. We therefore overrule Respondent's exceptions relating to the findings in paragraphs 10 and 11 of the memorandum opinion.

Respondent's next exception relates to Judge Rubin's findings in paragraphs 12 and 13 of the memorandum opinion. He argues:

Respondent also excepts to the Findings in paragraphs 12 and 13 of the Circuit Court's Memorandum Opinion that "Byrd provided interrogatory answers but they were not under oath, as required by Maryland Rule 3–421(d). However, both sets of Answers to Interrogatories stated they were 'affirmed.'" The Circuit [C]ourt also made a Finding in paragraph 13 of the Memorandum Opinion that Respondent's statement that the Peroutka firm was "playing games" with discovery lacked credibility. In making this Finding, however, the Circuit Court contradicted its own statement in paragraph 19 of the Memorandum Opinion that "the Peroutka firm may have been playing 'hardball' with Byrd's clients."

Maryland Rule 3–421(d) states that responses to interrogatories "shall answer each interrogatory separately and fully in writing under oath[.]" There is ample support in the record for the court's finding that the answers to interrogatories supplied by Respondent in the *Sy* and *Faulkner* cases were not under oath; indeed, Respondent does not deny the fact. Nor do we discern any inherent contradiction between Judge Rubin's finding in paragraph 13 that he did not believe Respondent's assertion that the Peroutka firm was "playing games," and the judge's finding in paragraph 19 that the Peroutka firm may have been playing "hardball" with Respondent. We therefore overrule Respondent's sixth exception.

Respondent's has two exceptions to Judge Rubin's conclusions of law set forth in paragraphs 15 through 19 of the memorandum opinion. First, he challenges Judge Rubin's conclusion that his, Respondent's, "failure to timely mail documents affected the handling of the cases by opposing counsel" violated Rule 1.4(a)(2). Respondent does not make a legal argument, and simply points out the lack of testimony that the Peroutka firm ever brought any of its complaints to Respondent's attention prior to seeking court involvement. This

exception is much like the exceptions we have already addressed and, for the reasons we have stated, we overrule it.

Respondent takes exception to the following statement by Judge Rubin in paragraph 19 of the memorandum opinion: "[W]hen the court reviews the facts of the case as a whole, the court is convinced that Byrd's conduct evidences a regular, intentional disregard of the Maryland Rules in his handling of debt collection cases, a disregard that is not countenanced simply because the Peroutka firm may have been playing 'hardball' with Byrd's clients." Respondent argues:

> Respondent has practiced law since 1980, focusing on debt collection cases since 2004 and has handled hundreds of debt collection cases brought by many different plaintiffs. The first and only charges ever brought against Respondent were filed by the Peroutka firm. Considering that out of the hundreds of debt collection cases brought by many different plaintiffs only the Peroutka firm (which may have been playing "hardball" with Respondent's clients) brought charges against the Respondent, the Circuit Court's conclusion that "Byrd's conduct evidences a regular, intentional disregard of the Maryland Rules in his handling of debt collection cases" is unsupportable, especially when the Circuit Court's conclusion in this regard is based on discreet incidents in only seven cases and where no good faith effort had been made to resolve the matters without court involvement.

We disagree with Respondent. To begin, we read Judge Rubin's statement concerning the regularity with which Respondent disregarded the Maryland Rules of Procedure as limited to the cases that were the subject of the Janis complaint. Moreover, Judge Rubin's statement is a fair characterization of all the facts concerning Respondent's behavior in those cases. We therefore overrule Respondent's exception to that statement.[13]

---

**13.** Respondent also takes exception to a statement Judge Rubin made in connection with his concluding that Petitioner had not proved the

 Judge Rubin determined that Respondent had violated the following MRPC provisions: With respect to the *Mebane* and *Hooker* cases, Respondent violated Rules 1.1 and 1.3 by failing to appear for a scheduled court proceeding. With respect to the *Honsberger* case, Respondent violated Rule 1.4(a)(2) by failing, without good reason, to notify his client of the trial date. With respect to the Respass and *Harvey* cases, Judge Rubin found that Respondent violated Rule 3.3(a)(1) by failing to mail documents on the dates represented in the certificates of service. With respect to the *Sy* and *Faulkner* cases, Judge Rubin found that Respondent violated Rule 1.1 by failing to serve interrogatory answers under oath. Finally, with respect to the *Kaplan* case, to which Respondent filed no exceptions, Judge Rubin found that Respondent violated Rule 1.1 by filing an untimely appeal.

Respondent does not claim that the facts upon which Judge Rubin relied for each of those determinations, if supported by clear and convincing evidence, fail to support the stated rule violations. We are left, then, with determining whether Judge Rubin's findings of fact relating to the Janis complaint (including the facts we accept because we overruled Respondent's exceptions and those we accept because Respondent filed no exceptions) establish by clear and convincing evidence that Respondent violated MRPC 1.1, 1.3, 1.4(a)(2), and 3.3(a)(1), as Judge Rubin concluded. In our independent assessment of the facts, we hold that they do support those rule violations.

### The Bankruptcy Complaint

Respondent first takes exception to a footnote in Judge Rubin's memorandum opinion, in which the judge notes:

At the hearing before this court, Byrd criticized the Fourth Circuit's decision for allegedly failing to address one of his grounds for appeal. This court rejects that contention for the reasons set forth by [United States District Court] Judge William Nickerson, in his Memorandum Opinion,

---

charges related to the *Ziegler* case. Because those charges were not proved, we see no reason to address this exception.

entered June 15, 2004, denying Byrd's motion for reconsideration of the remand order.

Respondent also takes exception to Judge Rubin's finding in paragraph 28 of the memorandum opinion that: "The bankruptcy court had good reason to appoint a Trustee, even though the case had been converted to a reorganization under Chapter 11." Respondent then argues, at some length, that the bankruptcy court improperly appointed a trustee. Neither of these exceptions is relevant to the present disciplinary charges. We therefore do not address either exception.

Respondent excepts to Judge Rubin's finding in paragraph 31 of the memorandum opinion that: "The court finds [Trustee] Johnson's testimony regarding his efforts to work with Byrd to achieve an orderly administration of the estate to be credible." Mr. Johnson was appointed Chapter 7 Trustee following the withdrawal of Robert Schlossberg, as the original trustee. Respondent challenges Judge Rubin's finding that Mr. Johnson provided credible testimony concerning his efforts to "work with" Respondent. Respondent directs us to certain testimony of Mr. Johnson and of James Hoffman, who served as counsel for Mr. Schlossberg in his capacity as trustee. In Respondent's view, "Hoffman and Johnson's testimony shows that they worked strenuously against the Respondent's Chapter 13 plan and against Respondent's efforts to keep his home."

The short answer to this exception is that Judge Rubin was entitled to weigh the testimony and make credibility determinations, based on it. *See Attorney Grievance Comm'n v. Mba–Jonas*, 402 Md. 334, 344, 936 A.2d 839, 844 (2007). We can and do defer to such credibility assessments. We note, moreover, Mr. Johnson's testimony detailing his efforts to administer the bankruptcy estate. That testimony, credited by Judge Rubin, fully supports the finding that Mr. Johnson "worked with Byrd to achieve an orderly administration of the estate." We therefore overrule the exception.

Respondent also excepts to the Circuit Court's Finding that Respondent's business reports were false. He characterizes

the reports as, at worst, "perhaps, somewhat imprecise and amateuristic." He points to certain evidence suggesting that "the general pattern of the business reports seemed to be under-reporting of income." Respondent then points out that this evidence "conflicts with the argument advanced by Hoffman [ ] that Respondent was attempting to over-report his income in an attempt to mislead the bankruptcy court into believing Respondent had $117,000.00 in his bank account a[t] the January 25, 2006 confirmation hearing for Respondent's Chapter 13 plan." Respondent argues that there was "no showing of a motive for falsifying his business reports," and, consequently, Judge Rubin's finding that "Respondent's business reports were 'false and that Byrd knew they were false' is not supported by clear and convincing evidence." [14]

 Judge Rubin did not err in finding that Respondent "did not file accurate or complete reports," as required by the Bankruptcy Code. The judge's finding was supported by the testimony of Mr. Hoffman. He testified at some length about Respondent's duty as a Chapter 11 debtor to file monthly operating reports indicating the "status of assets coming in, accounts receivable, collections, insurance," and his duty as a Chapter 13 debtor to file monthly operating reports indicating "cash flow and expenses of the business" in order to determine whether a repayment plan would be feasible. Mr. Hoffman further testified that Respondent failed to provide any information about any income generated while he was in Chapter 11, forcing Mr. Johnson to file monthly operating reports from July 2004 to January 2005 indicating an "unknown beginning balance, unknown income, unknown expenses, [and] unknown

---

14. Respondent also asserts that Petitioner does not allege in the petition for disciplinary review that he engaged in criminality. That is not so. The petition expressly alleges that "Respondent's filings [with the bankruptcy court] were false and Respondent made them with knowledge of their falsity." Further, the petition asserts facts in support of that allegation, and the petition charges Respondent with having violated MRPC 8.4(b). That rule provides that a lawyer engages in misconduct if the lawyer "commit[s] a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects."

daily balance." Mr. Hoffman also testified that Respondent's monthly operating reports were "grossly inaccurate, [ ] deceptive and misleading."

Judge Rubin, as he was entitled to do, found "Hoffman's testimony [regarding the falsity of Byrd's reports] to be highly credible, accurate, and reliable." Based on that testimony, there was sufficient evidence to support Judge Rubin's finding that Respondent's "reports to the bankruptcy court were false, and that [he] knew they were false when he filed the reports." Judge Rubin was correct, moreover, in finding that, by willfully filing the false reports, Respondent violated 18 U.S.C. § 1001 (which makes it a crime to falsify or conceal a material fact, or to make a false statement or provide a false document to the government or a government agent), and 18 U.S.C. § 1621 (which prohibits perjury).

Finally, Respondent does not dispute the two findings by the bankruptcy court that he was in contempt of court for failing to comply with the court's orders to turn over his financial records to the Trustee. Respondent simply directs us to his testimony that he was attempting at the time to "maintain a semblance of a law practice," while dealing with "the myriad extant bankruptcy issues" and "endeavoring in good faith to provide the documents requested by the Trustee." He argues that "there was not clear and convincing evidence that his failure to timely provide the discovery was done with the intention to thwart the Trustee."

The short answer to Respondent's argument is that we will not examine the propriety of the bankruptcy court's finding Respondent in contempt of court for violating the court's orders pertaining to discovery. Judge Rubin properly accepted those findings of contempt. So do we.

Respondent does not directly contest Judge Rubin's findings that the bankruptcy court found him in contempt for (1) failing to comply with the court's orders that he allow the Trustee access to his property and vacate his residence so that it might be sold by the Trustee; and (2) violating the court's injunction enjoining him "from taking any other action, including but not limited to filing a lis pendens against the Property," and from

"filing, pursuing, or maintaining any action in state or other federal court seeking any remedy against the Trustee." Respondent simply argues, instead, that he had the right under the law to attempt to block the sale by filing in state court a complaint seeking a constructive trust against those persons involved in the sale, and by later amending that complaint after the court issued its order enjoining him from doing so. The United States District Court upheld the bankruptcy court's finding that Respondent was in contempt of its order enjoining him from such filings. Further, that court found that Respondent's filing the amended complaint "did constitute willfulness and bad faith."

Respondent correctly acknowledges that we will not "go behind" the bankruptcy court's finding of contempt or the United States District Court's decision upholding that finding. Nor, correctly, did Judge Rubin. We therefore accept Judge Rubin's findings concerning those rulings.

Judge Rubin concluded, based on the multiple contempt findings, that Respondent violated several rules of professional conduct. The judge concluded that Respondent's "willful misconduct in flagrantly disobeying court orders and the rules of the bankruptcy court, manifestly involved dishonesty and was prejudicial to the administration of justice. The conduct violated Rule 8.4(c) & (d)." Judge Rubin concluded that Respondent violated MRPC 3.4(c), when he knowingly and intentionally contravened the bankruptcy court's orders to allow access to the property and to vacate the premises. Judge Rubin also concluded that Respondent violated MRPC 8.4(b), (c), and (d) by filing a false business reports in contravention of the law, and, in doing so, made false statements to the bankruptcy court and the Trustee.

Other than raising the concerns we addressed and rejected above, Respondent does not argue that the court's conclusions concerning the bankruptcy complaint are wrong as a matter of fact or law. We have reviewed each of Judge Rubin's conclusions of law, in light of the facts he found. We hold, based on that review, that the judge's conclusions of law are supported by clear and convincing evidence.

## The Sanction

Having determined that Respondent committed multiple violations of the MRPC as found by Judge Rubin, we now consider the appropriate sanction for those violations. Petitioner requests that Respondent be disbarred. Petitioner notes that, among Respondent's many rule violations, the "most significant" are his violations of MRPC 8.4(b) and 8.4(c), by committing perjury when he filed false business reports under oath in the bankruptcy proceeding. Petitioner reminds us that this act alone warrants disbarment. Petitioner also points out that Respondent's conduct obstructed the orderly administration of the bankruptcy, leading on several occasions to findings of contempt of the bankruptcy court's orders.

We are mindful that our goal in attorney grievance matters is to protect the public and the public's confidence in the legal profession. *Attorney Grievance Comm'n v. Kreamer*, 404 Md. 282, 348, 946 A.2d 500, 539 (2008). In furtherance of that goal, we seek to deter other attorneys from similarly violating the MRPC. *Id.* " 'The public is best protected when sanctions are imposed commensurate with the nature and the gravity of the misconduct and the intent with which it was committed.' " *Attorney Grievance Comm'n v. Queen*, 407 Md. 556, 567, 967 A.2d 198, 204 (2009) (quoting *Attorney Grievance Comm'n v. Taylor*, 405 Md. 697, 720, 955 A.2d 755, 768 (2008)).

> With respect to rule violations involving dishonesty, we have said that, unlike matters relating to competency, diligence and the like, intentional dishonest conduct is closely entwined with the most important matters of basic character to such a degree as to make intentional dishonest conduct by a lawyer almost beyond excuse. Honesty and dishonesty are, or are not, present in an attorney's character. . . . Disbarment should be the sanction for intentionally dishonest conduct.

*Attorney Grievance Comm'n v. Parsons*, 404 Md. 175, 186, 946 A.2d 437, 444 (2008) (quoting *Attorney Grievance Comm'n v. Vanderlinde*, 364 Md. 376, 418, 773 A.2d 463, 488 (2001)); *see*

*also Siskind,* 401 Md. at 75, 930 A.2d at 348 (stating that " 'tactics involving dishonesty, fraud, or deceit, carry the risk of the ultimate sanction by this Court' ") (quoting *Attorney Grievance Comm'n v. White,* 354 Md. 346, 366, 731 A.2d 447, 458 (1999)). We have also made clear that, "only in the case of compelling extenuating circumstances 'will we even consider imposing less than the most severe sanction of disbarment' in cases involving dishonesty and fraudulent conduct." *Attorney Grievance Commission v. McClain,* 406 Md. 1, 19, 956 A.2d 135, 145–46 (2008) (quoting *Attorney Grievance Comm'n v. Goodman,* 381 Md. 480, 499, 850 A.2d 1157, 1168 (2004)).

 There are no such compelling extenuating circumstances to which Respondent points that mitigate his violations of MRPC 8.4(b) and (c). He simply argues, instead, that his conduct in the bankruptcy proceedings was a "matter of survival," the creditor who filed the involuntary bankruptcy proceedings was "mean spirited," and the various Trustees (excepting the Chapter 13 Trustee) were "motivated by a desire to prevent Respondent from having any successful bankruptcy plan to pay his creditors." The record before us does not support Respondent's arguments, but even if it did, Respondent's assertions do not begin to approach the sort of compelling circumstances that might militate against disbarment for his conduct associated with the MRPC 8.4(b) and (c) violations.

Moreover, those violations do not stand alone. In connection with the filing of false reports in the bankruptcy proceeding, Respondent also violated MRPC 8.4(d). It cannot be gainsaid that filing those reports was "conduct prejudicial to the administration of justice." Respondent also violated MRPC 3.4(c) by flagrantly disobeying the bankruptcy court's orders to provide the Trustee and his attorney with access to the residence, comply with discovery, and desist from filing court papers designed to frustrate the sale. By engaging in such conduct, Respondent "knowingly disobey[ed] an obligation under the rules of a tribunal...." Furthermore, Respondent repeatedly violated MRPC 1.1, 1.3, 1.4(a)(2), and 3.3(a)(1), in connection with his handling of the cases discussed

in the Janis complaint. Those violations, like Respondent's violations of MRPC 8.4(d) and 3.4(c), add further support for the sanction of disbarment.

Finally, the mitigating factors of Respondent's lack of a record of attorney discipline and cooperation with Bar Counsel and the hearing court do not offset the significance of his numerous rule violations, of which the MRPC 8.4(b) and (c) violations loom large as particularly egregious. We conclude that " '[o]nly the most severe sanction of disbarment will provide the protection to the public that this [attorney grievance] procedure is supposed to provide.' " *Kreamer*, 404 Md. at 352, 946 A.2d at 541 (quoting *Attorney Grievance Comm'n v. Wallace*, 368 Md. 277, 293, 793 A.2d 535, 545 (2002)). We therefore order Respondent disbarred.

**IT IS SO ORDERED. RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–761, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST RALPH T. BYRD.**