OPINION OF THE COURT
Per Curiam.
The instant application is predicated upon an order of the Court of Appeals of the State of Maryland filed April 14, 2009 (408 Md 449, 970 A2d 870 [2009]), which disbarred the respondent, upon a finding that he was guilty of violating Maryland Rules of Professional Conduct rules 1.1 (competence), 1.3 (diligence), 1.4 (a) (2) (communication), 3.3 (a) (1) (candor towards a tribunal), 3.4 (c) (knowingly disobeying an obligation under the rules of a tribunal) and 8.4 (b), (c) and (d) (commission of a criminal act that reflects adversely on the lawyer’s honesty, trustworthiness, or fitness as a lawyer; conduct involving dishonesty, fraud, deceit, or misrepresentation; and conduct prejudicial to the administration of justice) in connection with two complaints of professional misconduct opened for investigation by the Attorney Grievance Commission of Maryland.
Underlying Facts
The Attorney Grievance Commission of Maryland, acting through Maryland Bar Counsel, filed a petition for disciplinary action against Ralph T. Byrd, charging him with violations of the Maryland Rules of Professional Conduct (hereinafter the MRPC).
*92 The Court of Appeals of the State of Maryland (hereinafter the Maryland Court of Appeals) referred the petition to the Honorable Ronald B. Rubin of the Circuit Court for Montgomery County (Maryland), for an evidentiary hearing, and to make findings of fact and conclusions of law. Judge Rubin held a two-day hearing, commencing on July 31, 2008. On August 26, 2008, he issued a memorandum opinion, finding the respondent guilty, by “clear and convincing evidence,” of multiple violations of the MRPC.
The charged violations initially emanated from three complaints of professional misconduct filed against the respondent. The first (hereinafter the Janis complaint) was filed by Gary M. Janis, Esq., an attorney with the law firm of Peroutka & Peroutka, PA. (hereinafter the Peroutka firm), with respect to the respondent’s involvement in a number of the firm’s collection cases. The other two complaints, which were initiated by Maryland Bar Counsel, stemmed from two unrelated matters: the respondent’s involvement in another case with the Peroutka firm (hereinafter the Ziegler case) and the respondent’s conduct during a personal bankruptcy proceeding (hereinafter the bankruptcy complaint).
Judge Rubin found that the charges relating to the Ziegler case were not proven by “clear and convincing evidence.” As to the other matters, Judge Rubin found as follows:
The Janis Complaint
On September 28, 2006, Gary M. Janis, Esq., an attorney with the Peroutka firm, filed a complaint against the respondent alleging numerous acts of professional misconduct arising out of the respondent’s representation of debtors in the District Courts of Maryland. Specifically, the complaint alleged, and Maryland Circuit Court Judge Rubin found, that from March 10, 2006, through November 19, 2006, the respondent appeared on behalf of debtors in eight collection cases wherein he failed to serve interrogatories under oath; failed to file a timely appeal; failed to appear without adequate explanation; failed to notify his client of her trial date; and/or misrepresented that he had mailed documents to his adversary when, in fact, he had not, in violation of MRPC rules 1.1 (competence), 1.3 (diligence), 1.4 (a) (2) (communication) and 3.3 (a) (1) (candor towards a tribunal).
*93 The Bankruptcy Complaint
On December 14, 2001, Platinum Financial Services Corporation (hereinafter Platinum Financial), one of the respondent’s creditors, filed an involuntary bankruptcy petition against the respondent under chapter 7 of the Bankruptcy Code (11 USC). At or about that time, the Bankruptcy Code permitted a single creditor to file an involuntary petition as long as: (1) the debtor had fewer than 12 creditors and (2) the creditor filing the petition held claims totaling more than $11,625 that were not subject to a bona fide dispute. Platinum Financial had obtained final judgments against the respondent in excess of $32,000.
Following the filing of the chapter 7 proceeding, the United States Bankruptcy Court for the District of Maryland (hereinafter the Bankruptcy Court) appointed Robert Schlossberg, Esq., as trustee. Schlossberg retained the services of James M. Hoffman, Esq., as his counsel. The respondent moved for summary judgment dismissing the petition in bankruptcy, and Platinum Financial cross-moved for summary judgment on the petition. The Bankruptcy Court denied the respondent’s motion and granted Platinum Financial’s cross motion.
The respondent appealed the Bankruptcy Court’s order to the United States District Court for the District of Maryland (hereinafter the District Court), which reversed, and dismissed the proceeding. Schlossberg and Platinum Financial appealed to the United States Court of Appeals for the Fourth Circuit (hereinafter the Fourth Circuit). The District Court stayed the dismissal of the chapter 7 petition pending appellate review. In a published opinion, the Fourth Circuit reversed the District Court’s judgment dismissing the chapter 7 proceeding, reinstated the petition, and remitted the matter for further proceedings in the Bankruptcy Court (see Platinum Fin. Servs. v Byrd, 357 F3d 433 [2004]). After remittal to the Bankruptcy Court, the respondent converted his chapter 7 “liquidation case” to a chapter 11 “reorganization.” However, in the exercise of its discretion, the Bankruptcy Court appointed a trustee rather than allow the respondent to control the bankruptcy estate. Schlossberg declined to continue serving as trustee, and the Bankruptcy Court appointed Gregory Johnson, Esq., to act as trustee in his stead. James Hoffman, Esq., remained as the trustee’s counsel.
The principal asset of the estate in bankruptcy was the respondent’s property in Laytonsville, Maryland, consisting of a residence and 11 acres of farmland. As a consequence of the respondent’s repeated failures to cooperate, Johnson moved to *94 obtain a writ of assistance for delivery to the United States Marshal. The Bankruptcy Court granted Johnson’s motion and directed the respondent to allow access to the property on 24-hour telephone notice. Johnson thereafter attempted to call the respondent on multiple occasions, to no avail.
Johnson thereupon filed another motion in the Bankruptcy Court requesting that the respondent be compelled to grant him access to the property. The Bankruptcy Court entered an order compelling the respondent to allow Johnson access to the property, and issued a writ of assistance. The Bankruptcy Court specifically found that the respondent had failed to comply with its prior orders regarding access.
Thereafter, the respondent’s wife, a co-owner of the property, filed a petition under chapter 13 of the Bankruptcy Code, which had the effect of staying Johnson’s efforts to sell the property. The Bankruptcy Court consolidated the respondent’s case with that of his wife. Subsequently, the Bankruptcy Court denied the respondent’s motion to confirm his proposed plan of reorganization under chapter 11, and converted the case back to a chapter 7 liquidation. Johnson, the chapter 11 trustee, was appointed as the chapter 7 trustee.
At or about that time, Johnson’s attorney, Hoffman, wrote to the respondent, advised the respondent of his intention to sell the property, and requested that the respondent vacate the premises within 30 days. The respondent refused to do so. Moreover, the respondent continued in his failure to acquiesce, despite additional letters from Johnson.
Johnson moved the Bankruptcy Court to authorize the respondent’s removal from the premises. The Bankruptcy Court held a hearing, and thereupon directed that the respondent vacate the premises by a date certain. The respondent did not obey the Bankruptcy Court’s order.
Maryland Circuit Court Judge Rubin noted that, under the Bankruptcy Code, the respondent was required to file monthly reports that set forth “his income, expenses, opening balance and closing balance.” However, he found that “[the respondent] did not file accurate or complete reports. [The respondent] did not provide timely or accurate information to [the Trustee], or provide supporting bank statements, despite a [Court] order requiring him to do so.” Judge Rubin found, further, that “[the respondent’s] reports to the [Bankruptcy Court] were false, and that [the respondent] knew they were false when he filed [them].”
*95 On four occasions, Johnson’s attorney, Hoffman, wrote to the respondent requesting financial information; however, the respondent failed to answer. Johnson moved to compel the respondent to produce documents and financial records. The Bankruptcy Court held a hearing, and thereupon directed the respondent to produce all requested financial information by a date certain.
Thereafter, the respondent wrote to Hoffman, stating that he did not have the requested records. According to the respondent, the records were “lost” when he moved to the Laytonsville property. Johnson moved to hold the respondent in contempt, and for the imposition of monetary sanctions, on the ground that the respondent failed to produce the requested financial information, and a hearing date was set. On the morning of the hearing, the respondent produced some bank records, including cancelled checks, and his 2005 federal income tax return. The hearing was postponed to give Johnson time to review the documents.
The Bankruptcy Court thereafter continued the hearing, and ultimately held the respondent in contempt for failing to produce the documents requested, and imposed sanctions against him. The Bankruptcy Court specifically found that the respondent’s “objections” were “without merit and filed for purposes of delay.” The Bankruptcy Court also found that the respondent and his wife had “no just cause for their refusal to provide the documents and information to the Trustee in response to his letters, or for their failure to comply with the [Court’s] Production Order.” Sanctions were imposed by the Bankruptcy Court because the record established “a continuous, ongoing effort by the Debtors to frustrate the Trustee’s administration of the estate.” According to the Bankruptcy Court, the debtors had “turned a request for documents by the Trustee into a costly, year-long charade.” The Bankruptcy Court also found that the respondent offered “no plausible explanation for [his] failure to produce the information.” Finally, the Bankruptcy Court found the respondent’s conduct “willful.”
The Bankruptcy Court denied the respondent’s request for a discharge in bankruptcy. After a hearing, the Court ruled that the trustee could sell the respondent’s residence. An order was entered to this effect.
Shortly before the hearing on Johnson’s motion for leave to sell the respondent’s property, the respondent commenced an action in the Circuit Court for Montgomery County (Maryland) *96 requesting, inter alia, that the state court impose a constructive trust on the residence that was part of the estate in bankruptcy. The respondent named as defendants, among others, Johnson, the current trustee, Schlossberg, the former trustee, Hoffman, the trustees’ attorney, and Maryland Bar Counsel. An amended complaint was subsequently filed.
Johnson filed an emergency motion in the Bankruptcy Court requesting, inter alia, that the respondent be held in contempt. However, the respondent argued that the mere filing of a state-court action, without actual service of process, did not constitute contempt.
The Bankruptcy Court granted Johnson’s emergency motion and entered an order enjoining the respondent from “filing, pursuing or maintaining any action in state or federal court, seeking to obtain possession, custody or control of or any interest in” the Laytonsville property. The Bankruptcy Court further enjoined the respondent from “taking any other action, including but not limited to filing a lis pendens against the property.” The Bankruptcy Court also enjoined the respondent from “filing, pursuing or maintaining any action in state or federal court seeking any remedy against the [current] Trustee . . . the [former] Trustee [or the Trustees’ counsel] without first seeking and obtaining leave of [the Bankruptcy Court].”
Nevertheless, the respondent filed a second amended complaint in the Circuit Court for Montgomery County (Maryland). The respondent therein incorporated all of the allegations previously set forth but added, as defendants, the prospective purchasers of the property. The respondent neither sought nor obtained the permission of the Bankruptcy Court before filing the second amended complaint in state court.
Johnson thereupon filed another emergency motion in the Bankruptcy Court in response to the respondent’s violation of the Bankruptcy Court’s order. At or about that time, the respondent served Johnson’s counsel, Hoffman, as well as Schlossberg, the initial trustee, with the second amended complaint.
The Bankruptcy Court entered an order holding the respondent in contempt for willfully violating the prior injunction.
The District Court affirmed the Bankruptcy Court’s contempt order, holding that the respondent’s filing of the second amended complaint “was particularly egregious because the [Bankruptcy Court] previously told [the respondent] that this type of action would violate” the Bankruptcy Court’s injunc *97 tion. The District Court concluded: “Because serving the Second Complaint [constituted] willfulness and bad faith, this Court finds that the [Bankruptcy Court] appropriately imposed sanctions.”
After the hearing in the state disciplinary proceeding, Maryland Circuit Court Judge Rubin found that, under the totality of the circumstances, the respondent had engaged in “willful misconduct” and “flagrant [disobedience]” of court orders “[manifesting] dishonesty and [conduct] prejudicial to the administration of justice,” in violation of MRPC rules 8.4 (c) and (d) (conduct involving dishonesty, fraud, deceit, or misrepresentation and conduct prejudicial to the administration of justice) and 3.4 (c) (knowingly disobeying an obligation under the rules of a tribunal); that he had filed false business reports in violation of MRPC rule 8.4 (b), (c) and (d) (commission of a criminal act that reflects adversely on the lawyer’s honesty, trustworthiness, or fitness as a lawyer; conduct involving dishonesty, fraud, deceit, or misrepresentation; and conduct prejudicial to the administration of justice); and that he had violated MRPC rules 3.4 (c) and 8.4 (d) (knowingly disobeying an obligation under the rules of a tribunal and conduct prejudicial to the administration of justice) when he filed state-court claims having no “colorable cause of action” in violation of the Bankruptcy Court’s injunction.
On review, the Maryland Court of Appeals entertained—and rejected—the respondent’s exceptions to Judge Rubin’s findings and conclusions (see Attorney Grievance Commn. v Byrd, 408 Md 449, 970 A2d 870 [2009]).
Having determined that the respondent committed “multiple violations” of the MRPC, the Maryland Court of Appeals noted that, among the respondent’s “many rule violations,” the “most significant” were his violations of MRPC rule 8.4 (b) and (c) (commission of a criminal act that reflects adversely on the lawyer’s honesty, trustworthiness, or fitness as a lawyer and conduct involving dishonesty, fraud, deceit, or misrepresentation) by “committing perjury when he filed false business reports under oath in [connection with his personal] bankruptcy proceeding [and] . . . obstructing] the orderly administration of the bankruptcy, leading on several occasions to findings of contempt of the [B]ankruptcy [C]ourt’s orders” (Attorney Grievance Commn. v Byrd, 408 Md at 483, 970 A2d at 889). In the absence of “compelling” mitigating circumstances (408 Md at 484, 970 A2d at 890), the Maryland Court of Appeals concluded *98 that those violations, without more, would have warranted the respondent’s disbarment.
However, as the Maryland Court of Appeals noted, “those violations do not stand alone” (id.). In connection with the filing of false reports in the bankruptcy proceeding, the respondent also violated MRPC rule 8.4 (d) (conduct prejudicial to the administration of justice). According to the Maryland Court of Appeals, “it cannot be gainsaid that filing those reports was ‘conduct prejudicial to the administration of justice’ ” (id., quoting MRPC rule 8.4 [d]).
The respondent also violated MRPC rule 3.4 (c) (knowingly disobeying an obligation under the rules of a tribunal) by “flagrantly” disobeying the Bankruptcy Court’s orders to (1) provide the Trustee and his attorney with access to the respondent’s residence, (2) comply with discovery, and (3) desist from filing court papers designed to “frustrate the sale” of the property. By engaging in such conduct, the respondent “knowingly disobey[ed] an obligation under the rules of a tribunal” (408 Md at 484, 970 A2d at 889 [internal quotation marks omitted]).
Furthermore, the respondent “repeatedly violated” MRPC rules 1.1 (competence), 1.3 (diligence), 1.4 (a) (2) (communication), and 3.3 (a) (1) (candor towards a tribunal) in connection with his handling of other matters. The Maryland Court of Appeals stated that “[t]hose violations, like [Respondent’s violations of MRPC [rules] 8.4 (d) and 3.4 (c), add further support for the sanction of disbarment” (408 Md at 485, 970 A2d at 890).
Finally, the Maryland Court of Appeals noted that
“the mitigating factors of the [rjespondent’s lack of a record of attorney discipline and cooperation with Bar Counsel... do not offset the significance of his numerous rule violations, of which the [violations of] MRPC [rule] 8.4 (b) [(commission of a criminal act that reflects adversely on the lawyer’s honesty, trustworthiness, or fitness as a lawyer)] and (c) [(conduct involving dishonesty, fraud, deceit, or misrepresentation)] loom ... as particularly egregious” (id.).
The Maryland Court of Appeals concluded that “[ojnly the most severe sanction of disbarment will provide the protection to the public that this . . . procedure is supposed to provide” (id. [internal quotation marks omitted]).
*99 The Grievance Committee for the Tenth Judicial District (hereinafter the Grievance Committee) served the respondent with a notice pursuant to 22 NYCRR 691.3, advising him of his right to file a verified statement setting forth any of the defenses to the imposition of reciprocal discipline enumerated in 22 NYCRR 691.3 (c) and to demand a hearing at which consideration would be given to any of the defenses raised. The respondent submitted a verified statement, to which he annexed the record of the underlying proceedings in Maryland, requesting a hearing and asserting the following defenses to the imposition of discipline by this Court: (1) that the procedure in Maryland was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; (2) that there was such an infirmity of proof establishing the misconduct as to give rise to the clear conviction that this Court could not accept the findings of the Maryland Court of Appeals; and (3) that the imposition of discipline would be unjust.
A hearing was held on February 9, 2012, before a Special Referee, at which the respondent appeared, with counsel, and testified in his own behalf as to each of the foregoing defenses.
Following the hearing, the Special Referee concluded that the defenses alleged by the respondent in opposition to the imposition of discipline by this Court were unavailing.
The Grievance Committee now moves to confirm the report of the Special Referee and impose such reciprocal discipline as the Court deems just and proper. The respondent opposes the Grievance Committee’s motion. Although the respondent contends that the Special Referee “unilaterally decided not to hear [his] defenses,” the Grievance Committee asserts, and we find, that the Special Referee fully considered, and properly rejected, the defenses asserted by the respondent.
In view of the respondent’s obvious lack of remorse, failure to appreciate the seriousness of his conduct, and the pattern of dishonesty, deceit, fraud, and misrepresentation that resulted in his disbarment in Maryland, we find that the imposition of reciprocal discipline is warranted.
Accordingly, the application is granted and, effective immediately, the respondent is disbarred in New York based upon the discipline imposed on him in the State of Maryland.
Eng, P.J., Mastro, Rivera, Skelos and Florio, JJ., concur.
Ordered that the Grievance Committee’s application to impose discipline in New York is granted; and it is further,
*100 Ordered that the Grievance Committee’s motion to confirm the Special Referee’s report is granted; and it is further, Ordered that pursuant to 22 NYCRR 691.3, effective immediately, the respondent, Ralph T. Byrd, a suspended attorney, is disbarred, and his name is stricken from the roll of attorneys and counselors-at-law; and it is further,
Ordered that the respondent, Ralph T. Byrd, a suspended attorney, shall continue to comply with this Court’s rules governing the conduct of disbarred, suspended, and resigned attorneys (see 22 NYCRR 691.10); and it is further,
Ordered that pursuant to Judiciary Law § 90, effective immediately, the respondent, Ralph T. Byrd, a suspended attorney, is commanded to continue to desist and refrain from (1) practicing law in any form, either as principal or as agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, judge, justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law; and it is further,
Ordered that if the respondent, Ralph T. Byrd, a suspended attorney, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency, and the respondent shall certify to the same in his affidavit of compliance pursuant to 22 NYCRR 691.10 (f).