*Attorney Grievance Commission of Maryland v. Michael David Fraidin*, Misc. Docket AG No. 6, September Term, 2013, Opinion by Greene, J.


ATTORNEY DISCIPLINE – Under the circumstances, an attorney's mishandling of client funds in his attorney trust account, combined with concocting and executing a scheme with his wife to commit bankruptcy fraud, constitute violations of Maryland Rules 16-606.1, 16-607, and 16-609; and MLRPC 1.15, 8.1(a), 8.4(a), (b), (c) and (d), and warrant the sanction of disbarment.

Circuit Court for Baltimore City
Case No. 24-C-13-001934
Argued: April 7, 2014

IN THE COURT OF APPEALS

OF MARYLAND

Misc. Docket AG No. 6

September Term, 2013
_____

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

MICHAEL DAVID FRAIDIN
_____

Barbera, C.J.
Harrell
Battaglia
Greene
Adkins
McDonald
Watts,

JJ.
_____

Opinion by Greene, J.
_____

Filed: May 16, 2014

The Attorney Grievance Commission of Maryland ("Petitioner" or "Bar Counsel"), acting pursuant to Maryland Rule 16-751(a), filed a "Petition For Disciplinary Or Remedial Action" against Michael David Fraidin ("Respondent" or "Fraidin"), on March 25, 2013. Petitioner charged Respondent with violating various Maryland Lawyers' Rules of Professional Conduct ("MLRPC" or "Rule"), specifically Rule 1.15 (Safekeeping Property),[1] Rule 8.1 (Bar Admission and Disciplinary Matters),[2] and Rule 8.4(a), (b), (c) and (d) (Misconduct).[3] In addition, Petitioner charged Respondent with violating Maryland Rules 16-606.1 (Attorney Trust Account Record-Keeping),[4] 16-607 (Commingling of Funds),[5] and

---

[1] MLRPC 1.15 provides in pertinent part that "(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. . . ."

[2] MLRPC 8.1 provides in pertinent part that "a lawyer . . . in connection with a disciplinary matter, shall not: (a) knowingly make a false statement of material fact; or (b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6."

[3] MLRPC 8.4 provides in pertinent part that "[i]t is professional misconduct for a lawyer to: (a) violate or attempt to violate the [MLRPC], knowingly assist or induce another to do so, or do so through the acts of another; (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects; (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation; (d) engage in conduct that is prejudicial to the administration of justice[. . . .]"

[4] Md. Rule 16-606.1 provides, in relevant part:
**(a) Creation of Records.** The following records shall be created and maintained for the receipt and disbursement of funds of clients or of third persons:
(1) Attorney Trust Account Identification. An identification of all attorney trust accounts maintained . . . .
(2) Deposits and Disbursements. A record for each account that
(continued...)

16-609 (Prohibited Transactions).[6]  The alleged violations stemmed primarily from two courses of conduct: (1) improper use and maintenance of Respondent's attorney trust account, and (2) engaging and assisting Respondent's wife in bankruptcy fraud.

This Court referred the matter to the Honorable Christopher L. Panos of the Circuit Court for Baltimore City for a hearing to issue findings of fact and conclusions of law

[4](...continued)
chronologically shows all deposits and disbursements . . . .
(3) Client Matter Records. A record for each client matter in which the attorney receives funds in trust . . . .
(4) Record of Funds of the Attorney. A record that identifies the funds of the attorney held in each attorney trust account as permitted by Rule 16-607 b.
**(b) Monthly Reconciliation.** An attorney shall cause to be created a monthly reconciliation of all attorney trust account records, client matter records, records of funds of the attorney held in an attorney trust account as permitted by Rule 16-607 b, and the adjusted month-end financial institution statement balance. . . .

[5] Md. Rule 16-607 provides, in relevant part, the general prohibition that "an attorney or law firm may deposit in an attorney trust account only those funds required to be deposited in that account by Rule 16-604 or permitted to be so deposited by section b. of this Rule. . . ."

[6] Md. Rule 16-609 provides:
**(a) Generally.** An attorney or law firm may not borrow or pledge any funds required by the Rules in this Chapter to be deposited in an attorney trust account, obtain any remuneration from the financial institution for depositing any funds in the account, or use any funds for any unauthorized purpose.
**(b) No Cash Disbursements.** An instrument drawn on an attorney trust account may not be drawn payable to cash or to bearer, and no cash withdrawal may be made from an automated teller machine or by any other method. All disbursements from an attorney trust account shall be made by check or electronic transfer.
**(c) Negative Balance Prohibited.** No funds from an attorney trust account shall be disbursed if the disbursement would create a negative balance with regard to an individual client matter or all client matters in the aggregate.

2

pursuant to Md. Rule 16-757.  On July 30, 2013 and August 1, 2013, Judge Panos conducted a two day evidentiary hearing, during which Respondent represented himself and elected not to testify as a witness or present any witnesses to testify on his behalf.  Thereafter, the hearing judge issued Findings of Fact and Conclusions of Law, in which he found, by clear and convincing evidence, that Respondent violated MLRPC 1.15, 8.1, 8.4(a), (b), (c) and (d), as well as Maryland Rules 16-606.1, 16-607, and 16-609.

## FACTS

Respondent was admitted to the practice of law on December 15, 1992, and maintains a solo practice in Baltimore, Maryland.  Respondent is married to Mara Fraidin ("Ms. Fraidin"), and they have two children.  Since the Fraidins' marriage in 1999, Ms. Fraidin has at no time worked outside the home or had an independent source of income.  Respondent has at all relevant times been the sole income provider for the Fraidins.  In 2004, Respondent and Ms. Fraidin purchased a home, titled in their names as tenants by the entirety and encumbered by a deed of trust held by Bank of America, N.A. ("Bank of America"). Subsequently, in 2009, the Fraidins began to struggle financially, leading to legal proceedings surrounding: (1) an outstanding debt related to a credit card held in Ms. Fraidin's name; (2) an outstanding debt related to a credit card held in Respondent's name; (3) foreclosure related to the marital home; and (4) Ms. Fraidin's filing for Chapter 13 bankruptcy relief.

3

**Chase Bank Credit Card in Ms. Fraidin's Name**

On February 5, 2010, Chase Bank USA, N.A. ("Chase Bank") sued Ms. Fraidin in the District Court of Maryland sitting in Baltimore County to collect on approximately $9,000.00 of outstanding debt on a credit card held by Ms. Fraidin in her name alone. On April 26, 2010, Ms. Fraidin retained Respondent to represent her in the Chase Bank litigation and executed a document titled "Attorney Fee Agreement/Contract of Employment," which stated that Respondent would represent Ms. Fraidin for a reduced hourly rate of $150.00. On April 28, 2010, Respondent entered his appearance as the attorney of record for Ms. Fraidin in the Chase Bank litigation.

On February 25, 2011, Respondent, on behalf of Ms. Fraidin, and Chase Bank negotiated a settlement for full satisfaction of Ms. Fraidin's outstanding debt. The settlement terms required that Ms. Fraidin pay $4,150.00 through three separate installments: $1,400.00 by March 31, 2011; $1,400.00 by April 30, 2011; and $1,350.00 by May 31, 2011. Despite the terms of the "Attorney Fee Agreement/Contract of Employment," Respondent never charged Ms. Fraidin for his representation of her in that matter. Nevertheless, Respondent made payments on behalf of Ms. Fraidin using funds from his Interest on Lawyer Trust Account ("IOLTA"). As found by the hearing judge:

> Specifically, Respondent purchased, on March 31, 2011, three money orders [made out to the law firm representing Chase Bank in its action against Ms. Fraidin] from 7-Eleven totaling $1,400.00 On May 2, 2011, Respondent purchased a Bank of America cashier's check in the amount of $1,400.00. On June 2, 2011, Respondent purchased a final Bank of America cashier's check in the amount of $1,350.00 after executing a $1,350.00 "Cash Withdrawal"

4

from his IOLTA account also on the same day.  Funds in Respondent's IOLTA account, held in trust for Ms. Fraidin, were insufficient to support the payments made by Respondent.  In order to purchase the foregoing money orders and cashier's checks, Respondent withdrew monies in his IOLTA account held on behalf of other clients.

Respondent maintained no client ledger detailing the deposits, disbursements, or other exchanges associated with the legal services provided to Ms. Fraidin relating to this matter.

## Bank of America Credit Card in Respondent's Name

In December 2010, Respondent settled a $25,000.00 outstanding credit card debt with Bank of America arising out of a credit card account held for personal use in his name alone. The settlement included a payment plan requiring an initial payment of $7,000.00 by March 28, 2011, followed by twelve consecutive monthly payments of $1,500.00.  On March 28, 2011, Respondent made a "Cash Withdrawal" of $7,000.00 from his IOLTA account, which Respondent then used to purchase a Bank of America cashier's check to make the initial payment to Bank of America.  With regard to Respondent's explanation of this action, the hearing judge found:

> Respondent asserted in his defense that he was representing Ms. Fraidin in the legal settlement with Bank of America and the money he withdrew and used from his IOLTA account was money held in trust on Ms. Fraidin's behalf. Respondent thus contends that the money he withdrew from his IOLTA account was properly accountable and attributable to his legal representation of Ms. Fraidin.  However, this defense is factually implausible in light of the fact that the Bank of America settlement stemmed from debt *he* incurred personally with a credit card issued in *his name alone*, which resulted in a legal settlement between *him* and Bank of America.  As a result, this [c]ourt finds Respondent's defense to be wholly without merit. [Moreover, t]he explanation Respondent made to Bar Counsel in a July 6, 2012 letter, [stating that the cash deposits "on 2/11/11 ($1,300), 2/14/11 ($1,000) and 3/28/11 ($5,000) were

5

monies being held on behalf of Mara Fraidin with a disbursement on 3/28/11 ($7,000),"] and similar arguments made in filings and statements before this [c]ourt regarding his purported representation of Ms. Fraidin's legal interests in the matter concerning the Bank of America credit card debt in his name alone, were knowingly and intentionally falsely made.

### Liquidation of Respondent's IRA/Retirement Assets

On June 14, 2011, Respondent liquidated his personal IRA account in the amount of $15,000.00, and wire-transferred the $15,000.00 into his IOLTA account. The hearing judge found that "Respondent's claim that this money . . . was being held for the benefit of and in the course of his representation of Ms. Fraidin, to pay the debt owed on Respondent's personal credit card, is implausible." Rather, the $15,000.00 wire transfer from Respondent's personal IRA constituted personal funds, which Respondent deposited into his IOLTA account.

### Foreclosure Action and Bankruptcy Proceedings

On June 1, 2010, Bank of America initiated a foreclosure action against Respondent and Ms. Fraidin relating to their marital home. A public auction of the home was scheduled for September 16, 2011. On September 14, 2011, two days prior to the scheduled public auction, Ms. Fraidin filed a Chapter 13 Voluntary Petition for Bankruptcy, naming Bank of America, as mortgage holder of the marital residence, as sole creditor. On September 16, 2011, Ms. Ellen W. Crosby ("Ms. Crosby") was appointed the Bankruptcy Trustee in relation to Ms. Fraidin's Petition. At that time, Ms. Crosby sent Ms. Fraidin a letter providing information about the Chapter 13 Bankruptcy process and requested copies of paychecks to

6

substantiate Ms. Fraidin's asserted income. In response to this request, Ms. Fraidin produced copies of several checks each in the amount of $3,000.00 and drawn on Respondent's IOLTA account, which purported to be paychecks from Ms. Fraidin's employment with Respondent's solo law practice. With regard to Respondent's participation in this process, the hearing judge found:

> In her bankruptcy proceedings, Ms. Fraidin asserted that she was self-represented. Additionally, Respondent denied having served as Ms. Fraidin's attorney during the bankruptcy proceedings. In the course of Ms. Fraidin's purported self-representation in the bankruptcy proceeding, Respondent "participated" in the collection of information, provided legal templates to Ms. Fraidin, and communicated with Christina M. Williamson, Esquire, counsel for Bank of America, toward the end of requesting a postponement for Ms. Fraidin, thus conveying to Ms. Williamson the perception that Respondent was acting as Ms. Fraidin's "agent." Additionally, Ms. Fraidin had, at best, a rudimentary understanding of the bankruptcy process as she did not comprehend the difference between the paychecks submitted in order to substantiate her source of income and checks sent to Ms. Crosby as the Trustee for the benefit of the creditors. Nor did Ms. Fraidin have any recollection as to where she purportedly obtained the form petition required to initiate the Chapter 13 Bankruptcy process. Despite never having formally entered his appearance on behalf of Ms. Fraidin, Respondent indeed served as her attorney in that matter.

On September 28, 2011, Ms. Fraidin filed with the United States Bankruptcy Court two documents relating to her financial interests and income: Schedule B – Personal Property, and Schedule I – Current Income of Individual Debtor(s). With regard to the filing of Schedule B, the hearing judge found:

> Included in the instructions on the Schedule B form is the directive, "Except as directed below, list all personal property of the debtor of whatever kind. If the debtor is married, state whether the husband, wife, both, or the marital community own the property by placing an 'H,' 'W,' 'J,' or 'C' in the column

7

labeled 'Husband, Wife, Joint or Community.'" In response to request No. 12, requiring the identification of "interests in IRA, ERISA, Keogh, or other pension or profit sharing plans," Ms. Fraidin selected "None." At the time of Ms. Fraidin's filing of Schedule B, Respondent maintained two retirement accounts with a combined total balance of approximately $40,000.00. Ms. Fraidin's Schedule B did not identify or disclose Respondent's retirement accounts in her Schedule B – Personal Property forms as required. The instructions for Schedule B also provide, *inter alia*, "If the property is being held for the debtor by someone else, state that person's name and address under 'Description and Location of Property.'" Ms. Fraidin did not state or disclose that between September and December 2011, Respondent was–according to him–holding money in his law firm escrow account for her benefit.

With regard to Schedule I – Current Income of Individual Debtor(s), Ms. Fraidin stated that she received $3,000.00 as "monthly gross wages, salary, and commissions." She further stated that, as of September 2011, she had been employed by the Law Offices of Michael D. Fraidin for a period of two years and described her occupation as "marketing." In addition to Schedule I, Ms. Fraidin filed a "Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income" in which she stated that she received from "wages, salary, tips, bonuses, overtime, commissions" in the amount of $3,000.00 per month. When asked to identify "amounts paid by another person or entity, on a regular basis, for the household expenses of the debtor or the debtor's dependents, including child support paid for that purpose" or "income from all other sources," Ms. Fraidin entered "$0.00." Ms. Fraidin also filed a Statement of Financial Affairs, stating that she received income from employment by Respondent's law office in the amount of $24,000.00 for 2010 and $22,000.00 for 2011. When asked to identify "income other than

8

from employment or operation of business," Ms. Fraidin selected "None." Despite these averments, the hearing judge found:

> Ms. Fraidin has never filed an Internal Revenue Service Form W-2 or Form 1099 in connection with her asserted employment with the Law Offices of Michael D. Fraidin, nor did she believe her income was contingent upon actually doing any work. Because Ms. Fraidin neither anticipated having to perform any duties in exchange for wages nor were any W-2 or 1099 forms ever filed on her behalf, this [c]ourt finds that Ms. Fraidin was never an employee of the Law Offices of Michael D. Fraidin, and did not receive any income from such employment as claimed. Despite the fact that all of the foregoing documents were signed by Ms. Fraidin under penalty of perjury after having certified that the information contained therein was true and correct, this [c]ourt finds that the representations contained in Ms. Fraidin's bankruptcy documents, filed under oath, (that she worked for Respondent's law office in 2010 and 2011, and that she received a monthly income of $3,000.00) were knowingly and intentionally false.

The hearing judge concluded that Ms. Fraidin filed the Chapter 13 Petition for the purpose of staving off the foreclosure action and public auction. The bankruptcy filing did in fact stay the foreclosure action and ultimately resulted in dismissal of that action without prejudice.

### Bar Counsel Investigation

Ms. Crosby, the Bankruptcy Trustee, alerted the Attorney Grievance Commission of Maryland that she had received from Ms. Fraidin copies of eight checks, four of which were purported to be paychecks substantiating her alleged income, all of which were drawn on Respondent's IOLTA account. Upon written request from Bar Counsel, Respondent explained that Ms. Fraidin was "working for him," and that the checks were compensation for the "marketing services" Ms. Fraidin provided for his law office. With regard to this

9

explanation, the hearing judge found that "Respondent's statements to Bar Counsel, representing that he provided the four (4) checks to his wife in her capacity as an employee of his law office and in exchange for the marketing services she provided to his law office [were] intentional and knowing misrepresentations of facts." Judge Panos further found:

> By letter dated February 1, 2012, Bar Counsel requested a copy of Respondent's client ledgers from August 2011 through February 2012 and copies of Respondent's IOLTA account records. Despite receiving from Bar Counsel an extension of time to compile the requested files, Respondent failed to produce a complete copy of the documents requested. Respondent's letter to Bar Counsel, dated February 27, 2012, and accompanying documents, were inadequate, and failed to fully comply with Bar Counsel's request. Bar Counsel requested complete copies of all bank records for August 2011 through February 2012, including all monthly statements, all deposited and disbursed items (front and back), and all debit and credit memos. Instead, Respondent incompletely produced copies of self-selected deposits, disbursements, and the first page of his bank statements for September 2011 and October 2011 only. Also in his response dated February 27, 2012, Respondent failed to produce a complete client ledger for the requested time period and instead only produced ledgers for two self-selected completed clients (one for R. Branton and another for Wilson Point Steel). When Bar Counsel requested, for a second time, Respondent's trust account records and client ledgers, Respondent stated, "I forwarded the documents that I had available on February 27, 2012." Respondent was intentionally evasive and uncooperative with Bar Counsel.

As a result of Respondent's consistent failure to produce complete bank records and client ledgers, demonstrating Respondent's "lack of cooperation with Bar Counsel's requests," Bar Counsel subpoenaed the missing records directly from the institution. At the evidentiary hearing, Petitioner called Mr. John DeBone, the now retired investigator for Petitioner, as a witness, who explained that he reviewed Respondent's trust accounts based on both the subpoenaed bank records and information provided by Respondent, including his client

10

ledgers, invoices, and assertions regarding certain cash deposits and withdrawals. Mr. DeBone's review of the records "establishe[d] that Respondent failed to delineate client funds and that Respondent repeatedly used his IOLTA account for his and Ms. Fraidin's personal use."

## Mitigation

Although Respondent maintained in his defense throughout the hearing that his conduct caused no harm to any clients or to the public, and therefore he should not be sanctioned, the hearing judge found "no evidence of mitigation" on the part of Respondent in relation to the alleged violations.

Judge Panos entered detailed conclusions of law, concluding that Respondent violated Md. Rules 16-606.1, 16-607, and 16-609; and MLRPC 1.15, 8.1, 8.4(a), (b), (c), and (d), as follows:

## Conclusions of Law

### A. Maryland Rule 16-606.1: Attorney Trust Record-Keeping

\* \* \* \*

This [c]ourt finds by clear and convincing evidence, and concludes as a matter of law, that Respondent violated Maryland Rule 16-606.1. First, Respondent did not maintain records that comply with this [R]ule. Specifically, no proper records were kept for [Respondent's two] trust accounts. Subsection (a)(2) (A)-(C) of [Md. Rule 16-606.1] requires that for each attorney trust account, a chronological record must be kept detailing transactions made from or to such account. By letters dated February 1, 2012, February 10, 2012, and March 1, 2012, Bar Counsel requested copies of Respondent's client ledger for the period of time between August 2011 and February 2012. However, rather than produce a client ledger meeting the requirements of this [R]ule,

11

Respondent produced documentation that, quite simply, falls far short.

Respondent did not produce client ledgers identifying each client or third person for whom he was holding money in trust. The documents actually produced by Respondent are insufficient, as they fail to provide most of the required information, making them "client ledgers" only in name and not in substance.

To say that Respondent did not keep *any* records would be a misstatement of fact. However, Maryland Rule 16-606.1 ensures that clients are afforded comprehensive protection through their attorneys' complete and accurate record keeping. Given a lawyer's fiduciary duty owed to his or her client, this [c]ourt finds by clear and convincing evidence that the scattered, incomplete records kept by Respondent failed to comply with the rigorous standards required by Maryland Rule 16-606.1. Thus, this [c]ourt concludes as a matter of law that Respondent violated this [R]ule.

### B. Maryland Rule 16-607: Commingling of Funds

\* \* \* \*

By his own admission, Respondent violated this [R]ule by depositing $22,000.00 of his personal funds into his IOLTA account. Additionally, documentary and testimonial evidence provided by Petitioner establishes that Respondent violated this [R]ule. Specifically, the trust account records and Mr. DeBone's review thereof reveal that between December 31, 2010 and March 29, 2012, Respondent commingled his personal funds with funds belonging to or for the benefit of his clients, and further, that Respondent used all such funds indiscriminately for his personal use.

This [c]ourt adamantly rejects Respondent's argument that his deposit of personal funds–specifically the $15,000.00 liquidated from his personal IRA account–into his IOLTA account was for the benefit of Ms. Fraidin, his client. As to the $7,000.00 deposit, this [c]ourt finds that it also represented a commingling of personal and client funds as, by her own admission, Ms. Fraidin had no independent source of income from which those funds could be derived. Realistically, all deposits made on behalf of or for the benefit of Ms. Fraidin as a client actually represented an impermissible commingling of personal and client funds, in direct violation of Maryland Rule 16-607. Further, this [c]ourt finds that Respondent's course of conduct lasted for nearly

12

the entire period examined and investigated by Bar Counsel–from January 24, 2011 through March 1, 2012.

### C.  Maryland Rule 16-609: Prohibited Transactions

\* \* \* \*

This [c]ourt finds that Respondent, during the period of the account analysis by Bar Counsel (December 31, 2010 through March 29, 2012), withdrew cash from his trust account in violation of Maryland Rule 16-609(b) on at least twenty-one (21) separate occasions, as evidenced by the Bank of America trust account records.  Each individual transaction represents a separate and distinct violation of this Rule.

Respondent argues that these transactions were approved by Bank of America, and thus cannot constitute violative transactions.    Unfortunately  for Respondent, however, banking institutions do not police the legal profession, and rules of each institution are not designed to ensure that each of its commercial clients adhere to the rules of their own profession.  Respondent had a duty to know, and is charged with knowing, that it is unlawful for an attorney to make cash withdrawals from client trust accounts.  Respondent's continuous course of conduct by withdrawing cash from client trust accounts on at least twenty-one (21) occasions in only fifteen (15) months constitutes a blatant violation of Maryland Rule 16-609.

### D. [MLRPC] Rule 1.15: Safekeeping Property

\* \* \* \*

As a practical matter, because Rule 1.15 requires that lawyers follow the Rules set forth in Title 16, Chapter 600 of the Maryland Rules, it is the belief of this [c]ourt that any violation of Title 16, Chapter 600 would serve as a *per se* violation of this Rule.  As stated above, this [c]ourt has found that Respondent violated Maryland Rules 16-606.1, 16-607, and 16-609.    Therefore, Respondent has violated sections (a) and (b) of this Rule.

Additionally, this [c]ourt finds by clear and convincing evidence that Respondent violated Rule 1.15 by failing to take the necessary precautions to safeguard client funds.  Specifically, Respondent failed to safeguard funds belonging to and associated with the clients identified on Mr. DeBone's client

ledger, namely: "S. Calhoun;" "H. Calhoun;" "G. Kopp;" "J. Townes;" and, "Unknown." The disbursements associated with the four named clients and the one "Unknown" do not have corresponding deposits during the period of the account analysis (December 31, 2010 through March 29, 2012). Therefore, any corresponding deposit would necessarily have been made prior to December 31, 2010. The disbursements, when combined, exceed the beginning balance of the account on December 31, 2010 and reveal that Respondent was out of trust in the amount of $1,925.28. Even assuming without deciding that such disbursements were made for the benefit of the four clients and "Unknown," as opposed to being used for personal reasons, the disbursements used $1,925.28 in funds belonging to another unidentified client. Therefore, this [c]ourt concludes as a matter of law that Respondent violated Rule 1.15 by failing to keep the property of his clients safe.

### E. [MLRPC] Rule 8.1: Bar Admission and Disciplinary Matters

\* \* \* \*

Respondent did not testify under oath during the disciplinary hearing. Throughout the course of this matter, however, Respondent's arguments, excuses, and explanations are best characterized as having been cyclical, off-point, tangential, inconsistent, and at times intentionally misleading.

By letter dated May 31, 2012, Bar Counsel requested the following from Respondent: "Provide the name of the client whose $15,000.00 was wired into the account on June 14, 2011. Provide the source of the funds and an account of any associated disbursements." By letter dated July 6, 2012, Respondent stated: "As far as the $15,000.00 wire transfer, these monies were for the benefit of Mara Fraidin, who instructed me to hold the monies on her behalf." This [c]ourt finds that Respondent's statement to Bar Counsel constituted knowing and intentional misrepresentations of fact which were intended to mislead Bar Counsel. It was not until July 1, 2013–almost an entire year later–that Respondent identified the actual source of this $15,000.00 wire transfer as being a cash deposit of his liquidated personal IRA. As further evidence of the false nature of Respondent's assertion that the $15,000.00 deposit was for Ms. Fraidin's benefit, Ms. Fraidin herself testified during her deposition that she never asked Respondent to liquidate any portion of his IRA or transfer $15,000.00 for her benefit. Additionally, Ms. Fraidin never declared such a gift within the filing of her documents associated with the bankruptcy petition. Therefore, this [c]ourt concludes as a matter of law that

14

Respondent made knowing and intentional misrepresentations of fact to Bar Counsel when he stated that funds were deposited and held for the benefit of his wife.

This [c]ourt further concludes that Respondent violated Rule 8.1(b) by failing to timely provide information and documentation requested by Bar Counsel's letters of February 1, 2012 and May 31, 2012. Because Respondent failed to provide requested bank records associated with Bank of America, Bar Counsel was forced to subpoena them directly from the institution. Additionally, Respondent failed to provide the following information in response to Bar Counsel's follow-up letter of May 31, 2012:

(1) a complete explanation of the wire transfer on September 16, 2011 to BMW Financial SVS;
(2) an explanation for why funds on behalf of P. Beck were not disbursed until November 14, 2011;
(3) an explanation for the deposit of $8.00 payable to Ms. Fraidin on May 13, 2011 . . . ; an explanation of the two deposits from Barbara Heller-Walsh on August 11, 2011;
(4) a complete explanation for the deposit of $6,164.08 from Ellen Cosby;
(5) a complete accounting for each "cash withdrawal" including the name of the client whose funds were disbursed and all associated documentation; and,
(6) a complete explanation of the counter debit of $3,117.41 on August 10, 2012 and equal deposit on August 11, 2012.

This [c]ourt notes that Respondent remarked upon the burdensome nature of Bar Counsel's investigation. Notwithstanding Respondent's "burden," this [c]ourt finds by clear and convincing evidence that he violated Rule 8.1(a) by knowingly and intentionally making false statements to Bar Counsel, and violated Rule 8.1(b) by intentionally misleading and failing to timely provide information to Bar Counsel.

### F. [MLRPC] Rule 8.4 (a) - (d): Misconduct

\* \* \* \*

This [c]ourt finds by clear and convincing evidence that Respondent aided, abetted and assisted Ms. Fraidin in violating 18 U.S.C. § 152 (2) and (3) by helping in the preparation and filing of forms and schedules which contained misrepresentations signed by Ms. Fraidin under penalty of perjury, in the

United States Bankruptcy Court. As such, Respondent's conduct in this regard clearly substantiates a conclusion that Respondent violated, assisted, aided and abetted his wife in violating 18 U.S.C. § 157.

Subsequent to filing her Chapter 13 bankruptcy petition to stave off foreclosure, Ms. Fraidin submitted a Schedule Summary to the United States Bankruptcy Court, which this [c]ourt finds to have contained blatantly incorrect and misleading information. Respondent has maintained throughout the course of the instant proceeding that he was not the bankruptcy attorney of record. However, Respondent's actions do not at all reflect his unyielding denial of involvement in and engagement as Ms. Fraidin's attorney in her bankruptcy proceeding. Quite the contrary, Respondent's actions suggest nothing else–and support no other conclusion–but that he acted as Ms. Fraidin's attorney (albeit not "of record") because, during the course of Ms. Fraidin's Chapter 13 Bankruptcy proceeding, Respondent by his own actions promulgated the perception that he was Ms. Fraidin's "agent," as he interacted with an attorney representing the bankruptcy creditor, Bank of America, and requested a continuance of the bankruptcy hearing. As such, this [c]ourt finds by clear and convincing evidence that a reasonable person in Ms. Fraidin's position would believe that Respondent was acting on her behalf to advance and protect her legal interest as her attorney throughout the bankruptcy proceedings.

Additionally, during the course of Ms. Fraidin's bankruptcy case, Respondent admitted that he, as a husband, gave his wife emotional support and "whatever help he thought might be useful to his wife in the preparation and filing of her Chapter 13 forms." This [c]ourt finds most of these forms to be necessary for the resolution of the bankruptcy action. Furthermore, Respondent admitted during the depositions of him and Ms. Fraidin, that he provided his wife with "[a]ny information that [she] needed" related to the bankruptcy filings. Respondent further acknowledged and admitted the advisory role he performed in Ms. Fraidin's bankruptcy petition, stating that "[i]f she would have asked me a question, I would have given her an answer." Respondent, not Ms. Fraidin, maintained all the books and financial records associated with his law office, and those related to the Fraidin household. Therefore, the information required to complete Ms. Fraidin's Chapter 13 Bankruptcy filings was provided by Respondent, either directly or by way of information supplied to his wife, and was knowingly and intentionally inaccurate. Thus, this [c]ourt concludes as a matter of law that Respondent's actions would constitute a violation of 18 U.S.C. § 152 (2) and (3), and as a result, a violation of

16

[MLRPC] 8.4(b).

Regarding Petitioner's allegation that Respondent violated 18 U.S.C § 157, this [c]ourt finds by clear and convincing evidence that Respondent and Ms. Fraidin concocted a scheme to defraud the United States Bankruptcy Court and executed it, all toward the ends of preventing the foreclosure of their home and qualifying Ms. Fraidin for a lesser Chapter 13 payment plan. This [c]ourt finds that the information contained in Ms. Fraidin's Chapter 13 Bankruptcy form was the beginning of bankruptcy fraud as alleged. On September 28, 2011, Ms. Fraidin filed a Schedule I – Current Income of Individual Debtor(s), wherein she stated that she received $3,000.00 as "monthly gross wages, salary, and commission." Ms. Fraidin also stated that, as of September 2011, she had been employed by the Law Offices of Michael D. Fraidin for a period of two (2) years and described her occupation as "marketing." Despite Ms. Fraidin's assertion on a federal document that she was employed by Respondent, she failed to file a W-2 or 1099 reflecting that "employment." Further, Ms. Fraidin admitted during her deposition in this matter that the payments of $3,000.00 per month were not contingent upon her performing any work for Respondent in his law office. Ms. Cosby, Ms. Fraidin's trustee, requested "paychecks" in order to verify monthly income and substantiate Ms. Fraidin's claim that she was, in fact, employed and received monthly income in the amount of $3,000.00. In response, Ms. Fraidin supplied checks written from Respondent's IOLTA account [only some of which were cashed]. As a result of Ms. Fraidin's ability to provide proof of income and employment, she was permitted to proceed under a Chapter 13 reorganization plan, as opposed to a plan under Chapter 7. Thus, this [c]ourt concludes that Respondent and Ms. Fraidin, by their scheme as executed, committed a fraud upon the Bankruptcy Court of the United States, and that Respondent's role in the scheme constitutes a direct violation of 8.4(b) and (c).

During Respondent's deposition, Petitioner inquired as to why Respondent continued to write checks to his wife from his IOLTA account despite the realization there was a problem with his actions. Respondent admitted that he first realized that there was a problem with drawing checks on his IOLTA account on October 7, 2011. Despite this awareness, Respondent nevertheless continued to draw checks on his IOLTA account to pay his wife. After drawing a check on his IOLTA account on October 26, 2011, Respondent provided Ms. Fraidin with a check so that she could forward it to her bankruptcy trustee. During his deposition, Respondent admitted "he gave his wife cash and never put the checks into the bank account." When further

17

questioned about how his wife obtained copies of the checks forwarded to Ms. Crosby, Respondent became evasive, failing to answer Petitioner's straightforward questions with an affirmative "yes" or "no," instead alternatively responding, "I don't know." For these reasons, the [c]ourt finds by clear and convincing evidence that Respondent's actions, when viewed conjunctively, further establish that Respondent and Ms. Fraidin knowingly and intentionally falsified United States Bankruptcy documentation and that Respondent intentionally fabricated paychecks for Ms. Fraidin as drawn on his IOLTA account for the sole purpose of submitting the same to the bankruptcy trustee in order to substantiate the misrepresentation that Ms. Fraidin was gainfully employed by Respondent's solo law practice. This [c]ourt additionally finds by clear and convincing evidence that Ms. Fraidin's purported income (stemming as it did from non-existent employment) was falsified for the purpose of staving off the foreclosure of the Fraidin family home by filing a petition for a Chapter 13 reorganization plan. Respondent's ongoing scheme, laden with repeated instances of dishonesty and misrepresentation, while having achieved its desired end, constitutes a fraud committed upon the United States Bankruptcy Court, and as such, represents a clear violation of the Maryland Lawyer's Rules of Professional Conduct.

Respondent's violations of [MLRPC] 8.1(a) and 8.4(b) as noted above, necessarily constitute a violation of 8.4(c) inasmuch as his conduct involved dishonesty, fraud, and misrepresentation. Further, Respondent's conduct, when taken as a whole, violates [MLRPC] 8.4(d) inasmuch as his dishonest and fraudulent behavior unquestionably besmirches and brings shame upon the legal profession, and places lawyers in disrepute. Thus, in sum, this [c]ourt concludes that Respondent, Michael Fraidin, has violated [Rules 16-606.1, 16-607, and 16-609]. Additionally, Respondent violated [MLRPC 1.15, 8.1, and 8.4(a), (b), (c), and (d)]. (Citations and footnotes omitted).

## DISCUSSION

In attorney discipline proceedings, this Court has original and complete jurisdiction and conducts an independent review of the record. *Attorney Grievance Comm'n v. Jarosinski*, 411 Md. 432, 448, 983 A.2d 477, 487 (2009). In our review of the record, the hearing judge's findings of fact will not be disturbed unless clearly erroneous. Rule 16-

759(b)(2); *Attorney Grievance Comm'n v. Guida*, 391 Md. 33, 50, 891 A.2d 1085, 1095 (2006). "The Court gives deference to the hearing judge's assessment of the credibility of the witnesses." *Attorney Grievance Comm'n v. Thomas*, 409 Md. 121, 147, 973 A.2d 185, 201 (2009) (citing *Attorney Grievance Comm'n v. Ugwuonye*, 405 Md. 351, 368, 952 A.2d 226, 236 (2008)). We review the hearing judge's conclusions of law *de novo*. Rule 16-759(b)(1).

Petitioner takes no exceptions to the hearing judge's findings of fact and conclusions of law. Although Respondent initially filed extensive written exceptions to the hearing judge's findings of fact and conclusions of law, at oral argument before this Court, counsel for Respondent withdrew many of the written exceptions and limited Respondent's exceptions to those addressed in our discussion below.

**Respondent's Attorney Trust Account**

With regard to Respondent's handling of his IOLTA account, the hearing judge concluded that Respondent violated MLRPC Rule 1.15, as well as Md. Rules 16-606.1, 16-607, and 16-609. Respondent's only exception as to the misuse of his trust account concerns the precise amount in which the hearing judge found Respondent to be out of trust in concluding that Respondent violated Rule 1.15.

First, "Maryland Rule 16-606.1, entitled 'Attorney Trust Account Record-Keeping,' requires attorneys to create and maintain records for all transactions regarding his or her attorney trust account, including 'ledgers showing all deposits and disbursements' from the

19

account." *Attorney Grievance Comm'n v. Harmon*, 433 Md. 612, 624, 72 A.3d 555, 562-63 (2013). Respondent concedes that he was not in compliance with Md. Rule 16-606.1, because he failed to maintain adequate client ledgers, including incomplete records of deposits and disbursements related to his two trust accounts. As stated by the hearing judge, Respondent kept "scattered, incomplete records," which did not "comply with the rigorous standards required by [the Rule]." We therefore agree with the hearing judge that Respondent violated Md. Rule 16-606.1.

Second, Md. Rule 16-607, "Commingling of Funds," requires an attorney to keep client property separate from personal property. Again, Respondent concedes that he violated this Rule by depositing personal funds into his IOLTA account, including the wire-transfer of $15,000.00 from Respondent's retirement account into his trust account. In addition, we agree with the hearing judge that all deposits allegedly made on behalf of Respondent's wife, who testified that she had no independent source of income, "represented an impermissible commingling of personal and client funds, in direct violation of Maryland Rule 16-607," where some of those funds were then utilized to make payments toward the credit card account held in Respondent's name alone. We therefore agree with the hearing judge that Respondent violated Md. Rule 16-607.

Third, Md. Rule 16-609, "Prohibited Transactions," prohibits cash withdrawals from attorney trust accounts. Md. Rule 16-609(b). *See also Attorney Grievance Comm'n v. Obi*, 393 Md. 643, 656, 904 A.2d 422, 429 (2006) ("Cash withdrawals from an escrow account

20

clearly frustrate [Rule 16-609's] purpose, which is 'to enable one who is authorized to do so to trace the disposition of escrow funds.'") (quoting *Attorney Grievance Comm'n v. Harper*, 356 Md. 53, 65, 737 A.2d 557, 563 (1999)). Respondent concedes that he made numerous impermissible cash withdrawals from his IOLTA account. We therefore agree with the hearing judge that Respondent violated Md. Rule 16-609.

Finally, MLRPC Rule 1.15 essentially captures the requirements and prohibitions of Md. Rules 16-606.1, 16-607, and 16-609. Rule 1.15(a) specifically provides that:

> A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained **pursuant to Title 16, Chapter 600 of the Maryland Rules**, and records shall be created and maintained **in accordance with the Rules in that Chapter**. Other property shall be identified specifically as such and appropriately safeguarded, and records of its receipt and distribution shall be created and maintained. Complete records of the account funds and of other property shall be kept by the lawyer and shall be preserved for a period of at least five years after the date the record was created. (Emphasis added.)

In this case, the hearing judge determined that "[a]s a practical matter, because Rule 1.15 requires that lawyers follow the Rules set forth in Title 16, Chapter 600 of the Maryland Rules, . . . any violation of Title 16, Chapter 600 would serve as a *per se* violation of [Rule 1.15]." Under the circumstances of this case, we agree that Respondent's violations of Md. Rules 16-606.1, 16-607, and 16-609 constitute *per se* violations of MLRPC Rule 1.15. *See Attorney Grievance Comm'n v. Ellison*, 384 Md. 688, 709, 867 A.2d 259, 271 (2005) ("[I]t is not outside the purview of this Court to draft overlapping rules, a narrow one for managing attorney client trust fund accounts and a broader one to set a minimum standard of

21

professional conduct in dealing with attorney/client trust funds. As such, a set of facts that constitutes a violation of one [Rule] may violate also the other [Rule] without there necessarily arising an unfairly duplicative set of sanctions."). In this case, the hearing judge concluded as a matter of law that because Respondent violated Md. Rules 16-606.1, 16-607, and 16-609, he also violated MLRPC Rule 1.15. The evidence clearly supports the hearing judge's conclusion. First, Respondent's insufficient record keeping, a violation of Md. Rule 16-606.1, is also a clear violation of Rule 1.15. *See Obi*, 393 Md. at 657, 904 A.2d at 430 (finding a violation of Rule 1.15(a) where the attorney maintained inadequate records of client funds). Second, depositing his own personal funds into his trust account in violation of Md. Rule 16-607 is a textbook example of a Rule 1.15 violation. *See Attorney Grievance Comm'n v. DiCicco*, 369 Md. 662, 679, 802 A.2d 1014, 1023-24 (2002) (noting that the hearing judge determined that "the same clear and convincing evidence that proved the [r]espondent violated Rule 1.15(a) requires me to also find that he violated the general prohibition against commingling in paragraph (a) of Md. Rule 16-607"). Finally, Respondent's cash withdrawals to make payments on his credit card, which violate Md. Rule 16-609, also constitute a violation of Rule 1.15. *See Attorney Grievance Comm'n v. Bell*, 432 Md. 542, 553, 69 A.3d 1040, 1046 (2013) ("[W]ithdrawing funds from a trust account for personal matters also constitutes a violation of Rule 1.15(a)."); *DiCicco*, 369 Md. at 676, 802 A.2d at 1022 (finding a violation of Rule 1.15 where the attorney used his escrow account "as if it also served as his personal bank account").

22

In addition to the violations of Title 16, Chapter 600 of the Maryland Rules, the hearing judge based his conclusion that Respondent violated MLRPC Rule 1.15 on his finding that Respondent's IOLTA account was out of trust in the amount of $1,925.28. Respondent does not dispute that his account was out of trust or that he failed to keep client property safe by failing to keep accurate records, but he disputes the exact amount in which his account was out of trust. Because it is clear that Respondent's account was out of trust and the exact amount at which Respondent was out of trust has no bearing on the sanction to be imposed, we decline to address Respondent's exception regarding the exact amount. *See Attorney Grievance Comm'n v. Snyder*, 368 Md. 242, 261-62, 793 A.2d 515, 526 (2002) (electing not to address one of the respondent's exceptions because it would not affect the sanction). *See also Attorney Grievance Comm'n v. Thomas*, 409 Md. 121, 175, 973 A.2d 185, 218 (2009) (citations and quotations omitted) ("[A]n attorney's misappropriation of funds entrusted to his care, be the amount small or large, is of great concern and represents the gravest form of professional misconduct.").

We also note that Respondent violated Rule 1.15 by commingling personal funds with client funds in his trust account to then write checks on his trust account to his wife, in order to create the illusion that she worked for his law office. Although the hearing judge did not expressly rely on this fact in reaching his conclusion, we conclude as a matter of law that Respondent failed to keep client funds safe and violated Rule 1.15 by depositing his personal funds into his escrow account (*i.e.* commingling personal funds with client funds) and then

23

making unauthorized withdrawals in the form of "paychecks" to his wife. *See Attorney Grievance Comm'n v. Nussbaum*, 401 Md. 612, 639, 934 A.2d 1, 16 (2007) (concluding that attorney's use of his escrow account to pay personal debts constituted an intentional misappropriation of client funds as well as commingling of funds in violation of Rule 1.15). Accordingly, we agree with the hearing judge that Respondent failed to keep his clients' property safe in violation of Rule 1.15.

## Rule 8.1

MLRPC Rule 8.1 requires attorneys to cooperate with Bar Counsel's lawful demands for information. In this case, the hearing judge found that "Respondent was intentionally evasive and uncooperative with Bar Counsel." The hearing judge further concluded that Respondent violated Rule 8.1(a) by making "knowing and intentional misrepresentations of fact which were intended to mislead Bar Counsel," in particular where Respondent stated to Bar Counsel that the $15,000.00 wire-transfer deposit into his escrow account was for the benefit of Ms. Fraidin, and did not reveal to Bar Counsel until nearly one year later that the source of the funds was Respondent's liquidated retirement account. In addition, the hearing judge concluded that Respondent violated Rule 8.1(b) "by failing to timely provide information and documentation requested by Bar Counsel" regarding Respondent's bank accounts, which forced Bar Counsel to subpoena the records directly from the institution. In our review of the record, we agree with the hearing judge that Respondent was evasive and misleading during Bar Counsel's investigation, and therefore violated Rule 8.1.

24

**Rule 8.4 Misconduct**

MLRPC Rule 8.4 provides in relevant part that it is "misconduct" for an attorney to:

(a) violate or attempt to violate the [MLRPC], knowingly assist or induce another to do so, or do so through the acts of another;
(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation; and
(d) engage in conduct that is prejudicial to the administration of justice. . . .

In this case, the hearing judge found "by clear and convincing evidence that Respondent aided, abetted and assisted Ms. Fraidin in violating 18 U.S.C. § 152 (2) and (3) by helping in the preparation and filing of forms and schedules which contained misrepresentations signed by Ms. Fraidin under penalty of perjury, in the United States Bankruptcy Court[,]" which in turn "substantiates a conclusion that Respondent violated, assisted, aided and abetted his wife in violating 18 U.S.C. § 157."[7]  In addition, the hearing judge found "by

---

[7] 18 U.S.C. § 152 (2012) generally prohibits the concealment of assets as well as false oaths and claims during the course of bankruptcy proceedings.  Specifically, § 152(2) provides criminal penalties for a person who "knowingly and fraudulently makes a false oath or account in or in relation to any case under title 11" and § 152(3) provides criminal penalties for a person who "knowingly and fraudulently makes a false declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, in or in relation to any case under title 11."

18 U.S.C. § 157 (2012) is the federal bankruptcy fraud statute, providing criminal penalties for "[a] person who, having devised or intending to devise a scheme or artifice to defraud and for the purpose of executing or concealing such a scheme or artifice or attempting to do so–(1) files a petition under title 11, . . . ; (2) files a document in a proceeding under title 11; or (3) makes a false or fraudulent representation, claim, or promise concerning or in relation to a proceeding under title 11, at any time before or after the filing of the petition, or in relation to a proceeding falsely asserted to be pending under such title."

clear and convincing evidence that Respondent and Ms. Fraidin concocted a scheme to defraud the United States Bankruptcy Court and executed it, all toward the ends of preventing the foreclosure of their home and qualifying Ms. Fraidin for a lesser Chapter 13 payment plan." Based on this finding, the hearing judge concluded that Respondent had committed a criminal act "that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer" in violation of MLRPC Rule 8.4(b).[8] The hearing judge further concluded that the same constitutes conduct "involving dishonesty, fraud, deceit or misrepresentation" and that Respondent's "dishonest and fraudulent behavior unquestionably besmirches and brings shame upon the legal profession, and places lawyers in disrepute" in violation of Rule 8.4(d). Finally, the hearing judge concluded that all of Respondent's actions, taken together, constitute a violation of Rule 8.4(a), as he has violated multiple rules under the MLRPC.

Respondent excepts to the conclusion that he violated Rule 8.4 with regard to the bankruptcy proceedings, primarily because he was at no time the attorney of record in Ms.

---

[8] Although there is no indication that either Respondent or Ms. Fraidin has been charged with violations of any federal bankruptcy statutes, as noted by the hearing judge in his conclusions of law, criminal prosecution is not required to prove that a lawyer committed a "criminal act" for the purposes of Rule 8.4(b). *See Attorney Grievance Comm'n v. Garland*, 345 Md. 383, 390, 692 A.2d 465, 468 (1997). As we made clear in *Attorney Grievance Comm'n v. Childress*, 364 Md. 48, 55, 770 A.2d 685, 689 (2001), where discipline is based upon an alleged criminal act where there has been no conviction, the standard of proof is clear and convincing evidence. In this case, the hearing judge found by clear and convincing evidence that Respondent assisted his wife in making false statements within the bankruptcy documents, as well as concocted and executed a scheme to defraud the United States Bankruptcy Court, which would constitute violations of 18 U.S.C. §§ 152 and 157.

Fraidin's bankruptcy case. In addition, Respondent argues that the statements at issue in the bankruptcy forms, which the hearing judge found to be false, could not be the basis for a finding of bankruptcy fraud because those statements and figures were not required to be included on the forms. For the following reasons, we overrule Respondent's exceptions.

First, whether Respondent was Ms. Fraidin's attorney of record in the bankruptcy case is of no moment. It is well established that discipline for professional misconduct is "not limited to conduct which occurred in the course of an attorney-client relationship." *Attorney Grievance Comm'n v. Childress*, 360 Md. 373, 383-84, 758 A.2d 117, 122-23 (2000). It is clear from the record that Respondent assisted Ms. Fraidin in the preparation of the bankruptcy documents. Indeed, Respondent admitted that, as a husband, he gave "whatever help he thought might be useful to his wife in the preparation and filing of her Chapter 13 forms." The hearing judge also concluded that a reasonable person would believe that Respondent was acting as Ms. Fraidin's "agent" during the bankruptcy proceedings due to his communications with the creditor's attorney and his request of a continuance of the bankruptcy hearing. Regardless of a third party's perception of Respondent's role in the bankruptcy proceedings, what is abundantly clear is that Respondent was intimately involved with the preparation and proceedings in his wife's bankruptcy case. In addition, Ms. Fraidin testified that Respondent maintained all the financial records both for his law office and for the family household. Therefore, by necessity, Respondent provided the financial information necessary to complete the bankruptcy forms to Ms. Fraidin. Accordingly, we

27

agree with the hearing judge's conclusion that Respondent was directly involved with the preparation and filing of Ms. Fraidin's Chapter 13 bankruptcy documents. *See Attorney Grievance Comm'n v. Wingerter*, 400 Md. 214, 231, 929 A.2d 47, 57-58 (2007) (noting that evidence of an attorney's awareness of immigration fraud and failure to report same, in addition to an attorney's concealment of the conspiracy, "was evidence of not simply a passive involvement; it demonstrated an active involvement").

Second, it is equally clear that the bankruptcy documents filed by Ms. Fraidin contained intentionally false statements of fact. It is of no consequence that the statements appearing on the bankruptcy forms were not required by law. It is the falsity and misleading nature of the statements that provide the basis of a violation of 18 U.S.C. §§ 152 and 157. *See supra* note 7. Therefore, Respondent's argument that the trial judge could not find that Respondent and Ms. Fraidin committed bankruptcy fraud because the false statements were not required by law to be included on the forms is entirely without merit.

As relied on by the hearing judge, the false statements primarily related to Ms. Fraidin's purported employment with Respondent's law office.[9] In order to qualify for a Chapter 13 Bankruptcy payment plan, Respondent believed it was necessary to establish Ms. Fraidin's source of income. To that end, Ms. Fraidin stated on her Chapter 13 Bankruptcy

---

[9] Although there appear to be additional false statements on Ms. Fraidin's bankruptcy forms, for example, her failure to identify property owned by her spouse, Respondent, the hearing judge's conclusions focused solely on the statements regarding Ms. Fraidin's purported employment with Respondent's law office. We shall therefore limit our discussion accordingly.

forms that she was employed by Respondent's law office, received $3,000.00 as "monthly gross wages, salary, and commissions," and described her occupation as "marketing." Throughout the instant proceedings, Respondent has maintained that Ms. Fraidin worked for him and did in fact engage in "marketing" activities for his law office. During her deposition, however, Ms. Fraidin made clear that she had no set hours or duties as part of her employment with Respondent's law office, and that the monthly payments of $3,000.00 were not contingent upon performance of any work or set hours. Tellingly, Ms. Fraidin has never filed any tax documents (IRS Forms W-2 or 1099) related to such employment, despite her assertions that she was employed in Respondent's law office for two years. Further, Ms. Fraidin indicated in her deposition that the $3,000.00 payments were part of the "support" given to her by Respondent, who has been at all times the "main income earner in the house," and were akin to a "monthly allowance." Therefore, even if Ms. Fraidin did in fact engage in "marketing" activities on behalf of Respondent's law office, the payments of $3,000.00 per month did not correspond to those activities as income for the purposes of the bankruptcy filing. Accordingly, we agree with the hearing judge that the statements to the contrary on the bankruptcy forms were misrepresentations of fact, intended to mislead and defraud the United States Bankruptcy Court, and that "Ms. Fraidin's purported income (stemming as it did from non-existent employment) was falsified for the purpose of staving off the foreclosure of the Fraidin family home by filing a petition for a Chapter 13 reorganization

29

plan."[10]

Moreover, to further substantiate the statements regarding Ms. Fraidin's alleged employment, Respondent issued checks for $3,000.00 to Ms. Fraidin from his IOLTA account,[11] which she in turn gave to the bankruptcy trustee as proof of her income. Although Respondent has at all times claimed that Ms. Fraidin worked for him and that these checks represented her monthly paychecks, the record reveals that only half of the checks forwarded to the bankruptcy trustee were actually cashed. The only logical conclusion is that the $3,000.00 checks were not in fact the paychecks they purported to be, and were instead

---

[10] Respondent excepts to the finding that the statements regarding income were "for the purpose of staving off the foreclosure of the Fraidin family home," because the foreclosure was stayed automatically by the initial filing, independent of the documents detailing Ms. Fraidin's income. We disagree with the emphasis that Respondent places on the instructions of each bankruptcy document. To the contrary, we agree with the hearing judge that Respondent assisted Ms. Fraidin in filing bankruptcy documents containing false statements. We further agree with the hearing judge that the purpose of the false statements (relating to Ms. Fraidin's purported employment, and otherwise), taken together, was to stop the foreclosure of the family home. Moreover, we note that Respondent failed to present a case before the hearing judge, at which time he could have made these arguments to the hearing judge. Instead, the hearing judge was required to infer Respondent's intent in assisting in the falsification of documents based on the facts presented by Petitioner. Based on the evidence presented, we conclude that the hearing judge did not err in finding that Respondent and his wife "concocted a scheme" to prevent the foreclosure of the family home. Accordingly, we overrule Respondent's exception.

[11] We note that the use of Respondent's IOLTA account to issue purported paychecks alone constitutes a violation of Rule 8.4, because Respondent used funds in his trust account for an unauthorized purpose. *See Attorney Grievance Comm'n v. Foltz,* 411 Md. 359, 406, 983 A.2d 434, 462 (2009) (overruling the respondent's exception to the hearing judge's conclusion that "by using a bank account designated as an attorney trust account for his business and personal transactions, Respondent falsely represented that the funds in the account were being held in trust for clients or client related matters, and therefore not available to creditors, in violation of [Rule] 8.4(c)").

30

issued to Ms. Fraidin in order to convince the bankruptcy trustee that she had a regular monthly income of $3,000.00. The falsified regular income would then affect Ms. Fraidin's Chapter 13 payment plan as determined by the trustee. Consistent with the conclusions of the hearing judge, we agree that Respondent assisted his wife in submitting false documents and used his trust account to commit fraud in the United States Bankruptcy Court.

Respondent's conduct is akin to that in *Attorney Grievance Comm'n v. Snyder*, 368 Md. 242, 793 A.2d 515 (2002), in which the respondent commingled funds in his client escrow account and used that account to conceal assets from his creditors during the pendency of his personal bankruptcy litigation. The respondent in *Snyder* also wrote checks from his trust account for personal purposes. We held there that the respondent's "well-calculated attempt to conceal personal assets in conjunction with the bankruptcy proceedings resulted in the commingling of funds . . . . It also involved dishonesty, fraud, deceit, misrepresentation and conduct prejudicial to the administration of justice in violation of [MLRPC] 8.4(c) and (d)." *Snyder*, 368 Md. at 261, 793 A.2d at 526.

Similarly, in *Attorney Grievance Comm'n v. Byrd*, 408 Md. 449, 970 A.2d 870 (2009), the attorney filed false business reports under oath in his personal bankruptcy proceeding. There, we agreed with the hearing judge that the attorney's false statements to the bankruptcy court "manifestly involved dishonesty and was prejudicial to the administration of justice" and that he violated Rule 8.4(b), (c), and (d) "by filing a false business report in contravention of the law, and, in doing so, made false statements to the bankruptcy court and

31

the Trustee." *Byrd*, 408 Md. at 482, 970 A.2d at 889. Likewise, in *Attorney Grievance Comm'n v. Zodrow*, 419 Md. 286, 19 A.3d 381 (2011), the hearing judge found a violation of Rule 8.4 where the attorney failed to make pertinent disclosures regarding his assets and debts during his personal bankruptcy case, and testified in a false and misleading manner. We stated that the respondent's misconduct was "one infected with fraud, deceit and dishonesty." *Zodrow*, 419 Md. at 305, 19 A.3d at 392 (quoting *Attorney Grievance Comm'n v. Willcher*, 340 Md. 217, 220, 665 A.2d 1059, 1061 (1995)).[12]

Based on our review of the case at bar, the record overwhelmingly supports the hearing judge's findings that the statements regarding Ms. Fraidin's $3,000.00 monthly income were false, and that Respondent assisted Ms. Fraidin in making those false statements as contained in her bankruptcy filings and to the bankruptcy trustee. In addition, by providing false support for Ms. Fraidin's claims regarding her income in the form of checks drawn on Respondent's trust account, Respondent utilized his trust account to commit bankruptcy fraud. Not unlike the situation in *Snyder, Byrd,* and *Zodrow*, we conclude that Respondent's conduct in the present case was "infected with fraud, deceit and dishonesty." Accordingly, we agree with the hearing judge that Respondent has violated Rule 8.4(a), (b), (c), and (d).

---

[12] We note that *Zodrow* was a reciprocal discipline case. Although the Colorado Supreme Court had issued a term of suspension, this Court concluded that the respondent's intentional, dishonest conduct warranted disbarment. *Zodrow*, 419 Md. at 306, 19 A.3d at 393 ("[T]he current state of law in this State warrants substantially different discipline than that imposed by Colorado." (citation and quotations omitted)).

## Sanctions

In attorney discipline cases, the sanction imposed depends on the facts and circumstances of each case, and in arriving at an appropriate sanction we "consider the nature of the ethical duties violated in light of any aggravating or mitigating circumstances." *Attorney Grievance Comm'n v. Paul*, 423 Md. 268, 284, 31 A.3d 512, 522 (2011). Accordingly, the sanctions imposed should be "commensurate with the nature and gravity of the violations and the intent with which they were committed." *Attorney Grievance Comm'n v. Stein*, 373 Md. 531, 537, 819 A.2d 372, 375 (2003). Considering the facts and circumstances of this case, we agree with Petitioner that the appropriate sanction is disbarment.

The misconduct in the instant case is twofold: (1) Respondent's intentional mishandling of his attorney trust account, and (2) Respondent's role in assisting his wife in the preparation of her bankruptcy documents, which included misrepresentations of fact for the purpose of defrauding the United States Bankruptcy Court. It is the combination of Respondent's mishandling of his attorney trust accounts in conjunction with Respondent's conduct in relation to the bankruptcy proceedings resulting in his violations of MLRPC 8.4(a), (b), (c) and (d) that warrant the ultimate sanction in this case. *See Attorney Grievance Comm'n v. Siskind*, 401 Md. 41, 74, 930 A.2d 328, 347 (2007) ("The gravity of misconduct is not measured solely by the number of rules broken but is determined largely by the lawyer's conduct.") (quoting *Attorney Grievance Comm'n v. Briscoe*, 357 Md. 554, 568, 745

A.2d 1037, 1044 (2000)). We are particularly concerned that Respondent would resort to such deception, commingling of personal funds and client funds, intentionally mishandle his IOLTA account, and expose his clients to risks of loss to avert the foreclosure of his property. As the record discloses, and as conceded by counsel, if Respondent had engaged competent bankruptcy counsel, he could have easily achieved his goal within the bounds of the law.

"Candor and truthfulness are two of the most important moral character traits of a lawyer." *Attorney Grievance Comm'n v. Myers*, 333 Md. 440, 449, 635 A.2d 1315, 1319 (1994) (citations omitted). For that reason, "[w]e long have held that acts of dishonesty, fraud, or misleading behavior may warrant a sanction of disbarment." *Siskind*, 401 Md. at 75, 930 A.2d at 348. "Unlike matters relating to competency, diligence, and the like, intentional dishonest conduct is closely entwined with the most important matters of basic character to such a degree as to make intentional dishonest conduct by a lawyer almost beyond excuse." *Attorney Grievance Comm'n v. Webster*, 402 Md. 448, 473-74, 937 A.2d 161, 175-76 (2007) (citation and quotation omitted). Moreover, as we stated in *Attorney Grievance Comm'n v. Vanderlinde*, 364 Md. 376, 773 A.2d 463 (2001), and have oft repeated:

> [I]n cases of intentional dishonesty, misappropriation cases, fraud, stealing, serious criminal conduct and the like, we will not accept, as "compelling extenuating circumstances," anything less than the most serious and utterly debilitating mental or physical health conditions, arising from any source that is the "root cause" of the misconduct *and* that also result in an attorney's utter inability to conform his or her conduct in accordance with the law and with the

34

[MLRPC]. Only if the circumstances are that compelling, will we even consider imposing less than the most severe sanction of disbarment in cases of stealing, dishonesty, fraudulent conduct, the intentional misappropriation of funds or other serious criminal conduct, whether occurring in the practice of law, or otherwise.

364 Md. at 413-14, 773 A.2d at 485. For that reason, we held that disbarment was the appropriate sanction in *Attorney Grievance Comm'n v. Byrd*, 408 Md. 449, 970 A.2d 870 (2009). In that case, where the respondent had committed a series of MLRPC violations, we noted that the "most significant" was "his violations of [MLRPC] 8.4(b) and 8.4(c), by committing perjury when he filed false business reports under oath in the bankruptcy proceeding. . . . [and] this act alone warrants disbarment." *Byrd*, 408 Md. at 483, 970 A.2d at 889.

Respondent asks that we impose a sanction of suspension with the right to apply for reinstatement after some period of time, based on the fact that Respondent has been practicing for twenty years with no prior complaints against him. Respondent, however, cites to no cases where we have imposed such a sanction for an attorney's intentional deceitful conduct. Moreover, Respondent has not provided, nor did the hearing judge find, any circumstances warranting mitigation in this case. On the other hand, Petitioner recommends that we impose a sanction of disbarment. In arriving at that sanction, Petitioner asks that we consider several aggravating factors, including Respondent's dishonest or selfish motive, a pattern of misconduct, bad faith obstruction of the disciplinary proceeding, refusal to acknowledge wrongful nature of his conduct, substantial experience in the practice of law,

35

and engaging in egregious criminal conduct.[13]

We agree that the aggravating factors are implicated. Respondent's motives in this case were dishonest and selfish. Respondent obstructed the disciplinary investigation by intentionally misrepresenting the facts to Bar Counsel. Respondent also made false statements and misrepresentations to Bar Counsel and to the hearing judge throughout the disciplinary proceedings, particularly in regards to the use of his IOLTA account, his representation of Ms. Fraidin in the credit card litigation, and his role in Ms. Fraidin's bankruptcy proceedings. Although Respondent has acknowledged his mishandling of his attorney escrow account, he has failed to take responsibility for his actions relating to the bankruptcy proceedings and the scheme he implemented with his wife to defraud the United

---

[13] We have explained that for purposes of aggravating factors in sanctioning, "we tend to rely on the factors included in Standard 9.22 of the American Bar Association Standards for Imposing Lawyer Sanctions." *Attorney Grievance Comm'n v. Patton*, 432 Md. 359, 379-80, 69 A.3d 11, 23 (2013). Those factors include:
> (a) prior disciplinary offenses;
> (b) dishonest or selfish motive;
> (c) a pattern of misconduct;
> (d) multiple offenses;
> (e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;
> (f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;
> (g) refusal to acknowledge wrongful nature of conduct;
> (h) vulnerability of victim;
> (i) substantial experience in the practice of law;
> (j) indifference to making restitution;
> (k) illegal conduct, including that involving the use of controlled substances.

States Bankruptcy Court. Taking into consideration the intentional mishandling of his trust account, the deceitful nature of his conduct in relation to Ms. Fraidin's bankruptcy matter, and the aggravating factors, the appropriate sanction is disbarment.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF ALL TRANSCRIPTS, PURSUANT TO RULE 16-761, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST MICHAEL DAVID FRAIDIN.**